COMPUTING SCALE CO. v. STANDARD COMPUTING SCALE CO., Limited.

(Circuit Court of Appeals, Sixth Circuit. November 5, 1902.)

No. 1,064.

1. TRADE-MARKS—DESCRIPTIVE WORDS—"COMPUTING" SCALES.
   The word "computing," as applied to the class of scales which, in addition to weighing, indicate the price of the article weighed, is aptly descriptive of such function, and cannot be appropriated by one manufacturer as a trade-mark for his own product, to the exclusion of other makers, of whose scales it is equally descriptive.

2. SAME—"STANDARD."
   The word "standard," as applied to scales, is descriptive, and cannot be appropriated as an exclusive trade-mark to designate a scale of a particular make, either alone or in connection with the word "computing."

8. UNFAIR COMPETITION—GROUNDS FOR RELIEF.
   In the absence of evidence showing that the words "standard" or "computing," as applied to scales, either singly or together, have acquired a secondary meaning in the trade, as indicating a scale made or sold by complainant, it is not entitled to enjoin their use by another manufacturer or dealer, as constituting unfair competition, unless it ap-

¶ 1. Arbitrary, descriptive or fictitious character of trade-marks and trade-names, see note to Searle & Hereth Co. v. Warner, 50 C. C. A. 323.

¶ 3. Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.

pears that they are used by defendant in such manner as to show a purpose to deceive purchasers into buying its scales for those of complainant.

Appeal from the Circuit Court of the United States for the Eastern District of Michigan.

This is a bill seeking to restrain an alleged infringement of a common-law trade-mark, and for the purpose of restraining unfair competition. The complainant is a corporation organized under the laws of Ohio, and bears the corporate name of the Computing Scale Company. It was incorporated in 1891, and its factory is in Dayton, Ohio. The defendant is a corporation of the state of Michigan, organized in 1899, and is doing business in Detroit under the corporate name of the Standard Computing Scale Company, Limited. Both companies are engaged in making a class of scales which, in addition to weighing, indicate the price of the thing weighed, and are commonly and generally known as "computing scales." The complainant claims that it and its predecessors in business have been the pioneers in the business, and have created a large market for such scales, and that its predecessor adopted the name "computing" as a fanciful name, not descriptive of the article, but pointing out the origin or maker of the scale, and that, for further indicating the manufacturer, complainant adopted the word "standard," and has since used both words as trade-names, and that it has, by long prior use, acquired an exclusive right to the use of both said words as valid trade-marks. It further claims that, if it has not a technical trade-mark in said names, those words have acquired a secondary meaning which does point to complainant as the maker of computing standard scales. The bill charges that the defendant not only makes a scale which in form is needlessly made to resemble the scale made by complainant, and therefore intended to deceive the public into buying its scale as a scale made by complainant, but that it has also adopted complainant's trade-names, and is fraudulently calling its scale "Standard Computing Scales," with the purpose of misleading and deceiving the purchasers into the belief that its scale is the scale made and sold by complainant. The answer put in issue every averment of fraud or deceit, and denied that complainant has any valid trade-mark in the name "computing" or "standard," or that those names have come to stand for or indicate any particular manufacturer. Much proof was taken. Upon final hearing, relief was denied upon both aspects of the bill. From the decree dismissing the bill, the complainant company has appealed.

Archibald Cox, for appellant.
Charles H. Fisk, for appellee.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

LURTON, Circuit Judge, having made the foregoing statement of the case, delivered the opinion of the court.

The relief prayed by the complainant is sought upon two grounds: First, violation of a specific common-law trade-mark in the words "computing" and "standard," whether used separately or together; second, unfair competition, irrespective of any technical trade-mark, resulting from the use of the words "computing" and "standard" by the defendant company as a means of misleading or deceiving the public into the purchase of the scale made by the defendant as the scale manufactured by the complainant.

Treating these questions in their order, we have first to find whether the complainant company has acquired an exclusive right to the use of the word "computing" as a technical common-law trade-mark. Now, a trade-mark may consist in any symbol, sign, word, or form of words. But it was forcefully said by Chief Justice Fuller in Elgin

Nat. Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, 673, 21 Sup. Ct. 270, 273, 45 L. Ed. 365, that:

"As its office is to point out distinctively the origin or ownership of the articles to which it is affixed, it follows that no sign or form of words can be appropriated as a valid trade-mark, which, from the nature of the fact conveyed by its primary meaning, others may employ with equal truth and with equal right for the same purpose."

The primary meaning of "computing" is calculating, numbering, counting, or estimating. Complainants say that "computing" implies an intellectual operation, and that as a scale cannot think, calculate, or compute, the term, when applied to weighing scales or balances, has no such meaning, and is therefore wholly without any descriptive significance. On this assumption, it has been urged with much pertinacity that a word, though primarily descriptive, may be used in a nondescriptive sense, and, when so used, be a valid trade-mark. This is a misapprehension of the result of such cases as Reddaway v. Banham [1896] App. Cas. 199; Wotherspoon v. Currie, L. R. 5 H. L. 508; and Thompson v. Montgomery, 41 Ch. Div. 35, 50. If there is anything settled by the American and English cases, it is that any word or form of words which is primarily descriptive cannot be withdrawn from public use by adoption as a trade-mark. Referring to the English cases heretofore cited, where the use of descriptive or geographical words in a secondary sense was protected, Chief Justice Fuller, in Elgin Nat. Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, 677, 21 Sup. Ct. 270, 275, 45 L. Ed. 365, said:

"These and like cases do not sustain the proposition that words which in their primary signification give notice of a general fact, and may be used for that purpose by every one, can lawfully be withdrawn from common use in that sense; but they illustrate the adequacy of the protection from imposition and fraud in respect of a secondary signification afforded by the courts. In the instance of a lawfully registered trade-mark, the fact of its use by another creates a cause of action. In the instance of the use in bad faith of a sign not in itself susceptible of being a valid trade-mark, but so employed as to have acquired a secondary meaning, the whole matter lies in pais."

It the complainant has a technical trade-mark in the words "computing," its use by others will be restrained, for a wrongful intent in so using it will be presumed. But when the word is incapable of becoming a valid trade-mark, because descriptive or geographical, yet has by use come to stand for a particular maker or vendor, its use by another in this secondary sense will be restrained as unfair and fraudulent competition, and its use in its primary or common sense confined in such a way as will prevent a probable deceit by enabling one maker or vendor to sell his article as the product of another. Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537, 549, 11 Sup. Ct. 396, 34 L. Ed. 997; Chemical Co. v. Meyer, 139 U. S. 540, 11 Sup. Ct. 625, 35 L. Ed. 247; Mill Co. v. Alcorn, 150 U. S. 460, 14 Sup. Ct. 151, 37 L. Ed. 1144; Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118; Elgin Nat. Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, 21 Sup. Ct. 270, 45 L. Ed. 365; Bennett v. McKinley, 13 C. C. A. 25, 65 Fed. 505.

In support of the contention that a word having a common or primary meaning may become a valid trade-mark when it has acquired in trade a secondary meaning, the complainant has cited the cases of Reddaway v. Banham [1896] App. Cas. 199; Wotherspoon v. Currie, L. R. 5 H. L. 508; and Thompson v. Montgomery, 41 Ch. Div. 35, 50. In the first of these cases the words "camels' hair belting," descriptive of a belting made of camels' hair, were protected against use in such manner "as to deceive purchasers into the belief that they are purchasing belting of the plaintiffs' manufacture." The court did not hold that the words constituted a valid, technical trademark, but that they had acquired a secondary meaning, and had come to mean "belting made by the plaintiffs, as distinguished from belting made by other manufacturers, and did not mean belting of a particular kind, without reference to any particular maker." In other words, the case turned upon the moral and equitable principle "that nobody has any right to represent his goods as the goods of somebody else." Wotherspoon v. Currie and Thompson v. Montgomery were instances in which the name of a town, when applied to certain lines of manufacture conducted there by particular manufacturers, has come to stand for a particular manufacturer; that, while the name could not be held a valid trade-mark, its use in this secondary sense would be restrained, because, as used, it operated to deceive purchasers into believing that they were buying the goods of one manufacturer, when in fact they were getting goods made by a different person. The case of Plant Co. v. May Co., 44 C. C. A. 534, 105 Fed. 375, is supposed to sustain the contention that a word or name primarily descriptive or geographical may be a valid trade-mark. The case was decided by this court, and involved the question as to whether the name "Queen" could be a valid trade-mark when applied to a line of shoes to indicate origin of manufacture. The decision was put upon the cases of Baltz Brewing Co. v. Kaiserbrauerei, Beck & Co., 20 C. C. A. 402, 74 Fed. 222, Raymond v. Baking Powder Co., 29 C. C. A. 245, 85 Fed. 231, and others of like character there cited, in which the name "Kaiser," as applied to a beer, "Royal," as applied to a baking powder, and names of like character, such as "Monarch," "Victor," "King," etc., were sustained as valid trade-marks. But these cases rest upon the peculiar and specific character of the names so adopted as trade-names, being names not primarily descriptive of kind, quality, or class, when applied to inanimate things, and only standing, in a purely figurative way, for excellence or quality or grade or class. Not being descriptive words, they were capable of adoption as trade-names.

But it is said that, as "computing" implies a mental operation, its application as the name of any class of weighing balances or scales is a palpable misnomer. If this be so, the English language is inadequate, by any word or name, to indicate in an intelligent way the function of such a machine, for the synonyms of the word, "calculate," "estimate," "count," or "reckon," would equally imply a mental operation, and be just as inexact as "computing." Neither would the suggested term "price scale" be free from the like objection. "Price" primarily signifies the sum which the seller will receive in exchange,

and implies a mental operation requiring the exercise of memory and calculation. If the name fairly signifies some quality or function which the machine does or aids in doing, it cannot be regarded as an arbitrary or fanciful name; and if the word so adopted is one of common use, with a well-understood primary meaning, which is fairly descriptive of the article to which it is applied, or of some quality which it has, its exclusive use by one would manifestly deprive all others from using the same word in describing their own similar article or machine. That the word does aptly describe the class of scales to which it has been applied would seem to be indicated by long usage. When complainants adopted it, it had at an earlier day been applied to scales of the same class, and a number of patents had been granted to patentees for scales described as "computing scales." When the defendant engaged in the manufacturing of such scales several years later, more than 50 patents are said to have been issued for scales called or described as "computing scales," and not less than 8 or 10 companies were then engaged in making such scales, and calling them "computing scales." Of course, if the complainant has an exclusive prior right to the use of the word as a trade-mark, the fact that many others were endeavoring to filch the name when defendant entered the field would not make the defendant any the less an infringer, whatever the effect of such facts upon the question of damages. But the facts we have referred to, showing the prior use of the word as descriptive of the scale, and its subsequent wide adoption, are very forceful in showing that the word has from the origin of such scales been by common consent and general usage regarded as a descriptive term aptly describing the function of the scale in aiding the operation of computing or calculating the aggregate price to be paid for the article weighed thereon when properly adjusted by an intelligent operator. In view of the significance of the word "computing" when applied to a scale of the class here involved, it is very plain that it cannot lawfully be appropriated as a valid trade-mark, and that others may employ it with equal right and truth as descriptive of their own scales, when constructed for a like purpose. The effort to turn the descriptive word "standard" into an exclusive trade-mark, either separately or in connection with the verb "computing," is still less defensible, and we need say no more than we have said. The court below was clearly right in holding that the complainant had no technical trade-mark in either word.

We come now to consider the case made for an injunction upon the ground of deceit and fraud. To sustain this aspect of the bill, the complainant must show that the word "computing," though primarily descriptive, and therefore not the subject of a technical trade-mark, has acquired in the trade a secondary signification, indicating a scale made or sold by the complainant. The evidence wholly fails to show that the word "computing," associated with scales, had come to stand for the scale made by complainant at the time the defendant began its use as descriptive of its own scale. Upon the contrary, the weight of evidence is that its trade meaning accorded with its primary signification, and that, instead of standing for any manufacture, it stood for a

class of scales. In short, the name stands for a machine, and not for a maker. It will be of no public importance to summarize the evidence in order to support this conclusion. The testimony as a whole, including the catalogue and other advertising matter issued by the complainant, is ineffectual to show that either the public or the complainant itself regarded the word "computing" as indicative of the maker, and not the machine. The complainant never stamped its scales either as "computing scales" or "standard scales." The only name placed on its scales is its corporate name, "The Computing Scale Company." It is true that the word does very frequently appear in its catalogues and other advertising matter. But an attentive examination of that class of matter tends to convince us that its use is generally in a descriptive way, rather than as a "fanciful" or "arbitrary" word used to denote origin. To illustrate the mode of its use in connection with other words of a descriptive character, we take from complainant's catalogue a few instances where the word is used in explanation of some one of the many different kinds of computing scales made by the complainant, and intended for different kinds of dealers. Thus, "The Standard Market Money Weight Computing Scale, No. 2;" "The Standard Cylinder Computing Scale, No. 21;" "The Swinging Butcher Money Weight Computing Scale, No. 16;" "The Standard Butcher Money Weight Computing Scale, No. 15." At the bottom of each page of one of the catalogues is the statement, conspicuously displayed: "We are the pioneers in the computing scale business." And among the claims made for the complainant, and much pressed in its catalogues, are these: "We are the originators of computing scales." "We own all foundation patents on practical working computing scales." "The money weight system has revolutionized the method of selling goods by weight."

The other evidence does not help the case. Complainants claim the rights, patents, and good will of one Julius E. Pitrat, who made the scale from 1885 to about 1889, when he sold out to a company or corporation which carried on the business under the name of the Detroit Computing Scale Company. This company failed, and its assets passed into the hands of a firm who carried on the business for a time as Canby & Ozias, and finally sold their rights to the present corporation, who are incorporated as the Computing Scale Company. Now, Pitrat himself used a name plate on each scale made by him, which can hardly be regarded as sustaining his claim that he adopted the name "computing" as a purely arbitrary name signifying a scale made by him. That name plate was as follows: " 'Pitrat Computing Scale.' Patented March 31, 1885, and June 6, 1886, Gallipolis, Ohio." Pitrat's business card is also in evidence, and reads as follows: "The Pitrat Computing Scale Co., Manufacturers of the Celebrated Pitrat Scales, Gallipolis, Ohio." It is plain that his own name was the sign or symbol of origin relied upon by Pitrat, whatever his present opinion as to the fanciful character of the verb "computing."

We will not pursue the facts further. The complainant's case is not made out, so far as it is built upon the claim that "computing" had come to have a well-known secondary meaning, pointing to the origin or maker of the scale.

The case is even weaker for the word "standard." It is a descriptive word, and has been used by the complainant only as a descriptive word. This is shown by the names of scales heretofore set out, taken from complainant's catalogue, and is used to designate, not a scale made by a particular maker, but a particular class of scales, supported on standards, in distinction to "swinging," "spring balance," or "cylinder" scales. In short, "standard" stands for a particular subclass of computing scale, and was a term used only to indicate that class, and was never in any sense a word signifying the maker. It is also a word commonly employed in the scale trade as indicative of excellence and adherence to the standard of weights and measures fixed by the government.

But it is said that the defendant has copied the curved form of standards used by the complainant for that type of scale. This is true. But it is clearly shown that the double curved lines of the supporting iron standards is a form in very large use in machines made from metal. Examples are shown in sewing machines, lathes, and many other kinds of machinery. The curved lines of the supporting standards were therefore not a design peculiar to the weighing machine of the complainant, but copied from many earlier machines of a different type.

Finally it is said that the copying of the outlines adopted by complainant for its standard scales, and the use of the names "computing" and "standard," collectively establish a design to palm off the defendant's scale for the scale made by complainant. A court of equity will not tolerate deceit as a means of acquiring the business which legitimately belongs to another. But an attentive consideration of this case leads us to an agreement with the court below in respect to the absence of any such evidence as to resemblance as is likely to deceive the public into buying the scale of the defendant as a scale made by complainant. The complainant has not shown that the names "computing" or "standard" have come to have a trade significance differing from their primary and common meaning. They do not stand for or signify any particular maker of scales. They signify a particular class of scales, an article or a machine, and not a particular maker. The complainant's scales have in a conspicuous place on each scale the words: "The Computing Scale Co. Dayton, Ohio, U. S. A." This is complainant's corporate name, and no other name or descriptive words are placed on its scales. The defendants place on each of their scales their corporate name, "The Standard Computing Scale Company, Limited, Detroit, Michigan." On the beam used by complainant for their corporate name the defendants have placed the words, in conspicuous letters, "Standard Computing Scale." These two name plates plainly distinguish the scale made by the defendant from the scale made by complainant. In addition to this, there is a marked mechanical difference in the two structures, resulting in a different mode of operation, which could not but be noted by one familiar with the scales, in even a slight degree. In general appearance there are resemblances and differences, but if the complainant has no exclusive right to the words "computing" and "standard," as specific trade-marks, and has

not shown that either word has acquired a secondary meaning in trade, pointing to it as the manufacturer, the resemblances, considered by themselves or in association with both words, are far from sufficient to show that the public is likely to be deceived into buying the defendant's scale in the belief that it is the scale made by complainant.

There is no error, and the decree dismissing the bill must be affirmed.