## LOWE BROS. CO. v. TOLEDO VARNISH CO.

(Circuit Court of Appeals, Sixth Circuit. March 22, 1909.)

No. 1,873.

TRADE-MARKS AND TRADE-NAMES (§ 73*)—UNFAIR COMPETITION—INJUNCTION.

The words "High Standard," as applied to paints or varnishes, are in themselves descriptive of quality, and cannot be monopolized as a trademark; but where they have been used for a number of years by one manufacturer exclusively for a trade-mark, and have thereby acquired a secondary meaning with the trade and public as designating and identifying the products of such maker, their use by another in connection with similar goods in a way which may probably deceive purchasers will be enjoined as unfair and fraudulent competition.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. § 73.*

Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.

Arbitrary, descriptive, or fictitious character of trade-marks and trade-names, see note to Searle & Hereth Co. v. Warner, 50 C. C. A. 323.]

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

H. A. Toulmin and R. J. McCarty, for appellant.

Before LURTON and SEVERENS, Circuit Judges, and COCHRAN, District Judge.

LURTON, Circuit Judge. This is a bill to restrain infringement of an alleged trade-mark, said to consist in the words "High Standard" as applied and used by complainants in connection with paints and varnishes made and sold by them and used in advertising their products. Upon general demurrer the bill was dismissed, upon the ground that the words indicated quality, and the right to their exclusive use could not be acquired.

It must be conceded that the primary meaning of the words "High Standard" denotes quality, and in that sense they are not capable of an exclusive appropriation. But the bill contains certain averments, which, if true, would show that these words have come to have a secondary meaning denoting, when applied or used in connection with paints and varnishes, the manufacturer of the paint or varnish to which the words were directly applied. Thus it is averred:

"That 25 years ago your orator's predecessors adopted as their trade-mark the words 'High Standard' to designate the origin and ownership of their liquid paints and leading products. That for a period of 25 years your orator and its predecessors have employed this distinguishing trade-mark * * * in various forms of advertising to distinguish its liquid paints. * * * That your orators and its predecessors have expended half a million dollars or more in advertising its liquid paints and products under said trade-mark."

Again it is averred:

"That said trade-mark has been and is universally known and recognized as indicating that the said liquid paints having such trade-mark were made by your orator and were of superior quality. That your orator's sales amount

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

to more than 8,000 tons per year, all of which liquid paints and products are known and designated to the trade by said trade-mark, 'High Standard.'"

It is only necessary to determine whether, on the allegations of the bill, complainants have stated a case entitling them to protection in the use of the words "High Standard." The effect of the demurrer is to concede the truth of every averment of fact for the purpose of determining whether, assuming the facts to be as stated, the complainant has made a case. Conceding that the broad right to appropriate the words "High Standard" cannot be appropriated as a trade-mark, if it is a fact that the use of the words by the complainants and their predecessors in the same business has come "to be known and recognized" as indicating that the products in connection with which they have been so used were made by complainants, and that such products "are known and designated to the trade by said trade-mark 'High Standard,'" complainants have a right to restrain the use of the same words in this secondary sense; and defendants should be required, if they use them descriptively, to use them in such a way as will prevent their product from deceiving the public into the belief that it is the product or manufacture of complainants. In the case of Computing Scale Co. v. Standard Computing Scale Co., 118 Fed. 965, 967, 55 C. C. A. 459, 461, this court said:

"But when the word is incapable of becoming a valid trade-mark, because descriptive or geographical, yet has by long use come to stand for a particular maker or vendor, its use by another in this secondary sense will be restrained as unfair and fraudulent competition, and its use in its primary or common sense confined in such a way as will prevent a probable deceit by enabling one maker or vendor to sell his article as the product of another."

The same general principle is recognized by the court in American Washboard Co. v. Saginaw Mfg. Co., 103 Fed. 281, 43 C. C. A. 233, 50 L. R. A. 609, and in Plant Co. v. May Co., 105 Fed. 375, 44 C. C. A. 534, and in Newcomer v. Scriven Co. (C. C. A.) 168 Fed. 621.

It may be that complainants will be unable to show that they have used these words in a nondescriptive way as indicating origin or manufacture, or, if so, that the defendants have used them in their secondary meaning so as to deceive the public.

Decree reversed and remanded, with direction to overrule the demurrer.