P. H. DYMENT v. FRANK H. LEWIS, Appellant.

**Trade names:** UNFAIR COMPETITION: INJUNCTION. A trade name
which serves to identify a manufacturer's goods, although a
geographical name in connection with other words is used, is
entitled to protection as against unfair competition arising from

an imitation of the identifying element of the name by a rival, when used under circumstances likely to deceive.

**Same:** DESIGNATION OF LOCALITY IN CONNECTION WITH TRADE NAME. Unfair competition does not necessarily involve the right to an exclusive use of a name, symbol or device, and a word may not be capable of becoming an arbitrary trade mark; still, an unfair use of the word may constitute unfair trade: As where one in his trade name has designated the locality in connection with the character of his business, and the locality has thus become important with his customers, another who establishes a like business in the same locality will not be permitted to speculate on the good will of such proprietor by the use of a like trade name, with the intent of thus obtaining an unfair advantage.

**Same:** DECREE. Where the only issue in a suit to restrain the unfair use of a trade name was the right to use the same name, the court was not required to suggest a modification which would enable the public to discriminate between the business of plaintiff and that of defendant.

*Appeal from Woodbury District Court.*—HON. DAVID MOULD, Judge.

THURSDAY, NOVEMBER 18, 1909.

SUIT for permanent injunction resulted in decree as prayed. The defendant appeals.—*Affirmed.*

*P. A. Sawyer* and *Edwin J. Stason,* for appellant.

*Jepson & Jepson,* for appellee.

LADD, J.—The plaintiff began business in 1893 under the name and style of the "Robe & Tanning Company" at Leeds, a suburb of Sioux City. He has always conducted his correspondence and kept his bank account in that name and done most of his advertising in that name; but soon after beginning business letters, orders, and consignments began coming to him addressed "Sioux City Robe & Tanning Company," and have continued ever since. Both names

appear in the directories and telephone books. He employed both names on his place of business, in his booth at a fair conducted within the city limits, and on a banner had the latter name printed. His business extends over nine or ten states and is transacted by correspondence; raw hides being shipped to him and returned finished, as required. Many of the drafts are drawn in favor of the "Sioux City Robe & Tanning Company," and a larger amount of business comes to him under that name than under the name with the locality omitted. George B. Lewis was an employee of plaintiff up to 1900, when he, with one Peterson, established another tannery nearby under the name of the "Northwestern Robe & Tanning Company," under which name Lewis still operates it. His son, the defendant, attained his majority on August 10, 1908, and five days later filed articles of incorporation for the "Sioux City Robe & Tanning Company." These articles provided for a capital of $10,000, of which the incorporator had but $1,000, and had made no provision for the disposition of the remainder of the stock. He was aware that plaintiff received consignments and correspondence in that name, and that there had been trouble with his father, by whom he had been employed, and the plaintiff, but testified that he had no reason for adopting the name save that for business reasons none other would do as well. On hearing, the court enjoined defendant from engaging in the business of tanning or manufacture of fur robes and hides and the sale of the manufactured product thereof in the name of the "Sioux City Robe & Tanning Company."

I.   The circumstances leading up to the plaintiff's use of two trade-names relieve him of any imputation of dishonesty of which he is accused. It was due to no fault of his that his patrons designated as the name of his business the "Sioux City Robe & Tanning Company." He had omitted the locality; but because it was in that enterprising

1. TRADE NAMES: unfair competition: injunction.

city, those dealing with him made use of its name in connection with that voluntarily adopted by him, and he acquiesced therein. The record is convincing that he had built up a large and lucrative trade in that name, and we are not inclined to interfere with the decision of the district court that another ought not to be permitted to rob him thereof by dressing himself in the same name and thereby deceiving the public to his injury. Appellant concedes that plaintiff would be entitled to protection against the use of the name with "Sioux City" omitted, and then argues that no significance can be given the name of a locality, as it is common property. The distinction between the "Robe & Tanning Company" of Sioux City and the "Sioux City Robe & Tanning Company" is decidedly narrow and somewhat hazy, when examined from the practical viewpoint of the public. The use of these by different concerns would in all probability lead to confusion in the transaction of their business, and this is one of the principal grounds on which equity interferes. Were the names entirely distinct, probably he would be entitled to the protection of but one. They are alike, however, save the use of the name of a locality, except in a secondary sense, can not be appropriated as a trade-name. Its use or omission can not ordinarily be regarded as a marked distinguishing feature. See *Samuels v. Spitzer,* 177 Mass. 226 (58 N. E. 693). Connection or combination of it with other words of designation usually is essential to warrant the conclusion that its use should be protected. Indeed, it is immaterial by what means a trader's goods or business are identified, whether by personal description or by geographical name in connection with other words, for if it appear that the means adopted perform the function of identification, imitation of the identifying element by a rival trader under such circumstances as to render deception of those who deal with him a probable consequence will be enjoined. In other words, the doctrine

of unfair trade amounts to no more than this: One person has no right to sell goods as the goods of another, nor to do other business as the business of another, and on proper showing will be restrained from so doing.

Appellant has cited a large number of decisions to the effect that one is not entitled to protection in the use of a trade-mark which is purely descriptive of his business or of this in connection with the locality where conducted. Whatever may be the law with reference to trade-marks, this is not the unvarying rule applied in cases of unfair competition. The distinction between the law of trade-marks and that of unfair competition is pointed out in *Sartor v. Schaden,* 125 Iowa, 696, where the latter is said to be bottomed on the principle of common business integrity and to proceed on the theory that:

2. SAME: designation of locality in connection with trade name.

While a primary and common use of a word or phrase may not be exclusively appropriated, there may be a secondary meaning or construction which will belong to the person who has developed it. In the secondary meaning there may be a property right. . . . Consequently unfair competition is distinguished from trade-mark cases in this: That it does not necessarily involve the question of the exclusive right of another to use the name, symbol, or device. A word may not be capable of becoming an arbitrary trade-mark, and yet there may be an unfair use of the word which will constitute unfair trade. The whole doctrine is based upon the theory of protection to the public whose rights are infringed or jeopardized by confusion of goods produced by unfair methods of trade, as well as upon the right of the complainant to enjoy the good will of a trade built up through his efforts and sought to be taken from him by unfair methods.

One using the ordinary name of a commodity, business, or occupation in connection with the name of a

locality will not always be entitled to protection. This
necessarily depends on circumstances. See *Delaware &
Hudson Canal Co. v. Clark,* 13 Wall. 328 (20 L. Ed.
581); *Laughman's Appeal,* 128 Pa. 1 (18 Atl. 415, 5 L.
R. A. 599). As many as choose can, in good faith, engage
in the same business or occupation described by such a
name, and annexing the name of the locality does no more
than indicate the place where the business is conducted;
but when the goods are manufactured or produced at the
place designated, if the name of the place is used fraudu-
lently, or if a manufactory has been located with a view
of obtaining the advantage of the name to the detriment
of the other, it has long been settled that the use of the
name will be enjoined. In *Siexo v. Provezenda,* 1 L. R.
Ch. 192, the name of a district in Spain had long been
used to denote the wines grown on one estate in that dis-
trict, and it was ruled that the name could not be applied
to wines from another estate of the same district, so as to
mislead the purchasers. In *Wotherspoon v. Currie,* 5 L.
R. H. L. 508, the plaintiff, who had originally carried on
the manufacture of "Glenfield" starch at Glenfield, a little
place of some sixty inhabitants, had removed his factory
retaining the name. The defendant had purchased a small
lot at Glenfield, and carried on the manufacture of starch
there, also using the name "Glenfield" to denote his starch;
but in view of the fact that the whole scheme was intended
to lead people to believe that the defendant's starch was
the plaintiff's, an injunction against the use of the name
was held proper. So, in *Thompson v. Montgomery,* 41 Ch.
D. 35, the plaintiff below and their predecessors had car-
ried on a brewery in Stone (a town of Staffordshire of
about six thousand inhabitants) since 1780, using the name
"Stone Ales" to designate their product. The defendant,
who had previously sold their product, put up a brewery
at Stone, and used the word "Stone" in connection with
the liquor of his own manufacture, with a view, in the

opinion of the trial judge, to lead the public to the belief
that the ales he was then selling were those of the former
firm.   An injunction was, accordingly, granted and af-
firmed on appeal.   The case was then carried to the House
of Lords, and there the decision was reaffirmed, though
there was a doubt in the minds of some of the Lords as
to the use of the name "Stone."

The principle is summarized tersely by Mr. Justice
Holmes in *American Waltham Watch Co. v. U. S. Watch
Co.,* 173 Mass. 85 (53 N. E. 141, 43 L. R. A. 826, 73 Am.
St. Rep., 263):

> It is desirable that the plaintiff should not lose custom
> by reason of the public mistaking another manufacturer
> for it.   It is desirable that the defendant should be free
> to manufacture watches at Waltham, and to tell the world
> that it does so.   The two *desirata* can not both be had to
> their full extent, and we have to fix the boundaries the
> best we can.   On the one hand, the defendant must be al-
> lowed to accomplish its *desideratum* in some way whatever
> the loss to the plaintiff.   On the other, we think the cases
> show that the defendant fairly may be required to avoid
> deceiving the public to the plaintiff's harm so far as is prac-
> ticable in a commercial sense. · It is true that a man can
> not appropriate a geographical name; but neither can he
> a color, or any part of the English language, or even a
> proper name, to the exclusion of others, whose names are
> like his.   Yet a color in connection with a sufficiently com-
> plex combination of other things may be recognized as
> saying so circumstantially that the defendant's goods are
> the plaintiff's as to pass the injunction line.   *New England
> Awl & Needle Co. v. Marlborough Awl & Needle Co.,* 168
> Mass. 154, 156 (46 N. E. 386, 60 Am. St. Rep. 377).
> So, although the plaintiff has no copyright on the diction-
> ary, or any part of it, he can exclude a defendant from a
> part of the free field of the English language, even from
> the mere use of generic words, unqualified and unexplained,
> when they would mislead the plaintiff's customers to an-
> other shop.   *Reddaway v. Banham* (1896), A. C. 199.
> So, the name of a person may become so associated with

his goods that one of the same name coming into the business later will not be allowed to use even his own name without distinguishing his wares. *Brinsmaid v. Brinsmaid*, 13 Times L. R. 3; *Reddaway v. Banham* (1896), A. C. 199, 210. See *Singer Mfg. Co. v. June Mfg. Co.*, 163 U. S. 169, 204 (16 Sup. Ct. 1002, 41 L. Ed. 118, 131); *Allegretti Chocolate Cream Co. v. Keller* (C. C.) 85 Fed. 643. And so, we doubt not, may a geographical name acquire a similar association with a similar effect. *Montgomery v. Thompson* (1891), A. C. 217. Whatever might have been the doubts some years ago, we think that now it is pretty well settled that the plaintiff, merely on the strength of having been first in the field may put later comers to the trouble of taking such reasonable precautions as are commercially practicable to prevent their lawful names and advertisements from deceitfully diverting the plaintiff's custom.

In that case defendant was enjoined from placing "Waltham" or "Waltham, Mass.," on its watch plates.

In *Viano v. Baccigalupo*, 183 Mass., 160 (67 N. E. 641), the plaintiff had been carrying on the business of roasting peanuts some years on Fulton Street under the name "Boston Peanut Roasting Company," when defendant engaged in the same business on the same street under the name "Boston Trade Peanut Roasting Company," and the court in granting the relief prayed, said: "The defendant has a right to carry on his business of roasting peanuts for the trade, and to carry it on in Fulton Street in Boston, and to advertise that he is doing so; but he has no right in making these advertisements to steal the good will attached to plaintiff's personality—the benefit of the public's desire to have their peanuts roasted by the plaintiff." And, after referring to some English decisions:

It is laid down in those cases that where the sole thing on which the plaintiff relies for relief against the defendant is a word common to the public, as in case of a geographical name, the plaintiff is not entitled to protec-

tion, unless he proves that the name has been so exclusively
identified with his own manufacture as to have acquired
a secondary meaning, as was done in *American Waltham
Watch Co. v. United States Watch Co.,* 173 Mass. 85 (53
N. E. 141, 43 L. R. A. 826, 73 Am. St. Rep., 263); but
in the case at bar the plaintiff's right to protection does
not depend on the defendant's having adopted a similar
single word alone, but on the combination adopted by the
defendant of the business name of "Boston Trade Peanut
Roasting Company," a name almost identical with the
plaintiff's name of "Boston Peanut Roasting Company,"
together with the fact that the business done by the de-
fendant is identically the same, and that the defendant
has selected a place of business, not only in the same city,
but on the same street.   That justifies a finding that the
action of the defendant is calculated to induce the public
to trade with the defendant, under the belief that it was
trading with the plaintiff.

In *La Republique Francaise v. Saratoga Vichy Spring
Co.,* 191 U. S. 427, 435 (24 Sup. Ct. 145, 146, 48 L. Ed.
247, 252), Mr. Justice Brown observed that:

Geographical names often acquire a secondary signifi-
cance not only of the place of the manufacture or produc-
tion, but of the name of the manufacturer or producer and
the excellence of the thing manufactured or produced,
which enables the owner to assert an exclusive right to
such name as against every one not doing business within
the same geographical limits, and, even as against them,
if the name is used fraudulently for the purpose of mis-
leading buyers as to the actual origin of the thing produced,
or of passing off the productions of one person as those of
another.

And Judge Lurton, in *Computing Scales Co. v. Stand-
ard Computing Scale Co.,* 55 C. C. A. 459 (118 Fed.
965), stated the doctrine with conciseness:

When the word is incapable of becoming a valid trade-
mark, because descriptive or geographical, yet has by use

come to stand for a particular maker or vendor, its use by another in this secondary sense will be restrained as unfair and fraudulent competition, and its use in its primary or common sense confined in such a way as will prevent a probable deceit by enabling one maker or vendor to sell his article as the product of another.

See *Elgin National Watch Co. v. Ill. Watch Case Co.,* 179 U. S. 665 (21 Sup. Ct. 270, 45 L. Ed. 365); *Pillsbury Washburn Flour Mills Co. v. Eagle,* 86 Fed., 608 (30 C. C. A. 386, 41 L. R. A. 162); *Miskell v. Prokop,* 58 Neb. 628 (79 N. W. 552), turned on the evidence.

The right to be protected in the use of a geographical or descriptive name does not depend upon a proprietary right therein or an exclusive right to its use. It is enough if such name or description is so employed in connection with other words of designation as to particularly identify the manufacturer or tradesman or his business. When thus identified, and, through advertising or long application, a business has been established under that name, another will not be permitted to pirate upon the good will of the proprietor's customers and patrons by sailing under his flag without his authority or consent. The theory on which the use of geographical or simple descriptive names are not protected is that to do so would give a monopoly in the sale of goods even of those other than produced by the person doing business thereunder, and the public would be injured thereby, instead of being protected. Moreover, in such a case the name of the business, when assumed by another, is truthful, and not calculated to deceive; but the name under which plaintiff was doing business was not one usually or customarily employed in the description of a particular trade or occupation. On the contrary, it was a combination of a word of such significance with another without definite meaning in connection with that of the locality. Had the name been "Sioux City Tannery," the authorities cited by appellant would have been more in point. As it is, the

name does not signify the nature of the business in its entirety, and has in its combination sufficiency of originality to entitle the plaintiff to protection against its use by another with the evident design thereby of encroaching on the business already built up at great cost in advertising, in labor, and sagacity. See *W. R. Lynn Shoe Co. v. Auburn-Lynn Shoe Co.,* 100 Me. 461 (62 Atl. 499, 4 L. R. A. (N. S.) 960).

It is said, however, that even though the name in its present form might not be used by defendant, the court should have directed that it might be retained if accompanied by an explanation which would avoid

3. SAME: decree.   deception.   No such relief was prayed by defendant.   The only issue was as to the propriety of employing the particular name, and for this reason there was no occasion to travel outside of the issues and suggest a satisfactory method of enabling the public to discriminate between the two.   See *Atlas Assurance Co. v. Insurance Co.,* 138 Iowa, 228.—*Affirmed.*