## ELBS v. ROCHESTER EGG CARRIER CO.

(Supreme Court, Equity Term, Monroe County.    March 16, 1912.)

1. COURTS (§ 489*) —STATE AND FEDERAL—JURISDICTION—PATENTS.

The federal courts have exclusive jurisdiction over questions of infringement of patents.

[Ed. Note.—For other cases, see Courts. Cent. Dig. §§ 1324–1341, 1372–1374; Dec. Dig. § 489;* Patents, Cent. Dig. § 177½.]

2. TRADE-MARKS AND TRADE-NAMES (§ 68*)—UNFAIR COMPETITION—USE OF UNPATENTED ARTICLE.

One creating a more convenient instrument or combination of instruments than had theretofore been known, but who does not obtain a patent, may not complain of unfair competition by one using a similar contrivance not copying features not affecting its working capacity, but only serving as identification marks.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 79; Dec. Dig. § 68.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 3*)—NATURE OF TRADE-MARKS—DESCRIPTIVE CHARACTER.

The words "egg carrier and tray manufacturing company" are descriptive in their primary sense, and cannot be appropriated as a trade-mark for the exclusive use of the manufacturer.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 4–7; Dec. Dig. § 3.*]

4. TRADE-MARKS AND TRADE-NAMES (§ 75*)—UNFAIR COMPETITION.

The words "egg carrier and tray manufacturing company" may acquire, when used in the name of a manufacturer, a predominating meaning throughout the trade, and an intentional use of the words as a tradename by a new concern to deceive or confuse the purchasing public is unfair competition which will be restrained in equity.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 86; Dec. Dig. § 75.*]

5. TRADE-MARKS AND TRADE-NAMES (§ 75*)—UNFAIR COMPETITION—ACTS CONSTITUTING.

A manufacturer at Rochester, N. Y., of egg carriers adopted the name "Star Egg Carrier & Tray Manufacturing Company." A competitor located at Rochester used the words "Rochester Egg Carrier Company," and his advertisements made it easy for the public to confuse the two concerns. *Held*, that the competitor was guilty of unfair competition.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 86; Dec. Dig. § 75.*]

Action by John G. Elbs against the Rochester Egg Carrier Company to restrain defendant from unfair competition. Judgment for plaintiff.

See, also, 146 App. Div. 903, 133 N. Y. Supp. 1120.

Church & Rich (James M. E. O'Grady, of counsel), for plaintiff. Werner & Harris (Geo. H. Harris, of counsel), for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

SUTHERLAND, J. The plaintiff and defendant manufacture egg carriers and trays in the city of Rochester. Plaintiff, as the principal stockholder and executive head of the corporation "Star Egg Carrier & Tray Manufacturing Co.," and latterly in his individual right, has been in that business since 1904, using individually for trading purposes the name "Star Egg Carrier & Tray Mfg. Co." Said corporation having been dissolved, plaintiff succeeded to its property and good will. The defendant commenced that business in October, 1910, when it was incorporated under the name "Rochester Egg Carrier Co." It has called itself, however, for advertising purposes and in its correspondence, "Rochester Egg Carrier & Tray Mfg. Co." The egg carrier manufactured by each party consists of a rectangular box containing 12 separate compartments to carry a dozen eggs, each compartment holding a single egg, in the top of which box a paper tray is placed bottom side up, which serves as a cover for the eggs, being held in place by a wire bail; and the package thus made up is sent from the store where the purchase is made to the house of the customer. There the bail is moved back, the carrier inverted, and the eggs are left in the paper tray with the purchaser; the carrier containing the cellular compartments being returned to the store of the dealer. Although egg carriers have been in use for many years in one form or another, the plaintiff's predecessor in the business, to whose rights he succeeded, was the first to establish a trade in this form of egg carrier in combination with a paper tray cover intended to be left with the purchaser of the eggs as the depositary thereof. Before the defendant was incorporated or began the manufacture and sale of similar devices, the instrumentality conceived by the plaintiff's predecessor had attained wide and deserved popularity, and a very extensive business with jobbers, wholesale dealers, and retailers throughout the country had been established, and plaintiff had spent large sums in advertising and organizing his business connections, and had acquired in the course of the years a good will which was and is of great value.

. The plaintiff alleges that the defendant, a newcomer in this line of business, starting in the same city, has imitated the plaintiff's mechanical product in structural plan and appearance, and has adopted a trade-name very similar to his own, and so closely has copied plaintiff's advertising matter as to result in confusion among his customers, diverting from plaintiff to the defendant much custom that is intended to come to plaintiff through the reputation which his product had acquired, and that the purchasing public is deceived thereby, and plaintiff's rights in the premises greatly prejudiced. The acts and purposes outlined by the plaintiff in his complaint are those known as "unfair competition." The defendant denies any intent to simulate the mechanical product of the plaintiff, and denies any attempt to copy the name or appropriate to his own use the peculiar and distinctive advertising plans or material utilized by the plaintiff, and asserts that it is marketing a product which it has a right to make and sell, and that its advertising and literary output have been only such as it has a right to use in stating to the trade the purposes, virtues, costs, etc., of the articles thus made and sold.

[1] Each party to the action holds letters patent upon certain features of the respective carriers thus manufactured and sold. Certain claims of infringement which cannot be determined in this case are in litigation in the federal courts, whose jurisdiction over those questions is exclusive, and where ample remedies may be awarded.

[2] As to the mechanical side of the matter before this court, it would seem that the similarity in form, method of construction, and appearance complained of does not amount to unfair competition, but results almost of necessity from the superior adaptability of apparatus constructed in just that way to the use for which it is intended. If the plaintiff or his predecessor created a more convenient instrument or combination of instruments for marketing eggs than had theretofore been known or used, the invention, unless patented, inured to the benefit of every one. The equitable rule forbidding unfair competition does not open a second way to acquire the monopoly given to an inventor under the patent laws. St. Paul Elec. Co. v. McCrum-Howell Co. (C. C. A.) 189 Fed. 849; Globe-Wernicke Co. v. Fred Macey Co., 119 Fed. 696, 56 C. C. A. 304. Of course, if defendant had dressed up its mechanical device so as to make it look like plaintiff's contrivance, copying features that do not affect its working capacity, but only serve as identification marks, and had done this to deceive purchasers as to the source of the goods, a different question would arise. But when one comes to make a box or case to contain a dozen eggs, there is not a wide variety of form from which to choose. There is only one best way of doing anything in the industrial world. Such a box, naturally, would be rectangular in form, and the rows of compartments would be three or four each, and the whole thing just large enough and strong enough to insure safe delivery and durability. Any paper tray, if intended to be used at first as a cover and next as a container in which the eggs are left on the kitchen table of the customer, naturally would be just about the size and shape of the paper trays used by plaintiff and defendant.

In the drawing of the device on which defendant's patent was applied for, the tray is depicted as extending outside of the edge of the carrier itself, and the tray is shown to be held in place by an elastic band attached to the side of the carrier. The tray in the plaintiff's device fits inside the edges of the carrier and is held in place by a metal bail which can easily be withdrawn at the moment of delivery. When the defendant came to put its product upon the market, its trays were made to go inside the carrier, and were fastened with wire bails, thus approaching very closely to the plaintiff's method. But it is evident on comparison that it is more practicable to have the tray inside the edges of the carrier, and that a sliding wire bail is a more permanent and desirable instrument for holding the tray in position over the eggs in transit than an elastic band would be. Now, if this more convenient and practicable method of placing the tray covering in the carrier and fastening it there in transit is not protected by the plaintiff's patent, it is open to the defendant or any one to utilize. And in reference to the mechanical part of this case it may be said generally there is no feature of similarity between the

product of the plaintiff and defendant, the choice of which is not explainable on the basis of convenience and suitability to the use intended.

On the other hand, the charge of unfairly simulating the trade-name and advertising matter of plaintiff seems to have substantial foundation. As stated above, the business to which plaintiff has succeeded was conducted from 1904 to October, 1909, at Rochester by a corporation having the corporate name and known in the trade as "Star Egg Carrier & Tray Manufacturing Co." Plaintiff, having become the owner of the capital stock of that corporation, caused it to be voluntarily dissolved; and upon the dissolution plaintiff acquired legal title to all its property, including trade-marks, good will, patents, etc., and in October, 1909, filed a certificate adopting as his trade-name the name of said former corporation, "Star Egg Carrier & Tray Manufacturing Co.," said certificate complying in that respect with the requirements of the statute, and since that time he has used said trade-name in conducting the business of manufacturing and selling egg carriers and trays. During the life of said corporation and since then, the said name became widely known, and came to be identified by the trade generally with the product manufactured and sold by the plaintiff and his predecessor; and the trade had come very generally to recognize the peculiar combination of egg carrier covered by a paper tray to be left as a container for the eggs with the purchaser, as a Rochester product, made exclusively by the concern known as "Star Egg Carrier & Tray Manufacturing Co." Now, after this reputation had been acquired, and the name of the producer and the product had become associated correlatively throughout the trade, the defendant, in October, 1910, became incorporated under the name "Rochester Egg Carrier Co." and began to advertise under and to use for trade purposes the name "Rochester Egg Carrier & Tray Mfg. Co." Among the stockholders of the defendant was one Talling, who had been connected with the plaintiff in a confidential capacity, and had knowledge of the plaintiff's customers throughout the United States and of plaintiff's business affairs generally. For some reason, Talling caused his stock in defendant company to be held in the name of his brother-in-law. Defendant's circulars and advertising matter, under the name "Rochester Egg Carrier & Tray Mfg. Co.," were sent to plaintiff's customers very generally, and some of those who had been accustomed to deal with the plaintiff were confused by the similarity of trade-names and advertising matter sent out by defendant, and supposed that the defendant was the same concern that had been making egg carriers and trays at Rochester, with which they had been accustomed to deal in the past; and it does not seem to be unjust to charge defendant with anticipating and endeavoring to bring about just such a result, so that some of the habitual customers of the plaintiff might unwittingly transfer their patronage to the defendant, believing that they were still dealing with the old concern.

[3] The words "egg carrier and tray manufacturing company" are, of course, descriptive in their primary sense, and cannot be appropriated as a trade-mark for the exclusive use of the plaintiff. Computing Scale Co. v. Standard Comp. Scale Co., 118 Fed. 965, 55 C. C. A. 459.

[4] But these words in the name of the manufacturing company had acquired a secondary and predominating meaning throughout the trade, before defendant became a competitor, signifying the specific and exclusive source of a well-known special product; and the intentional use of those words as a trade-name by a new concern, for the purpose of deceiving or confusing the purchasing public, is unfair competition and can be restrained if such confusion and deception has resulted or is likely to result. Lowe Bros. Co. v. Toledo Varnish Co., 168 Fed. 627, 94 C. C. A. 83; Nims on Unfair Business Competition, p. 212; 38 Cyc. pp. 789, 800, 801; Dyment v. Lewis, 144 Iowa, 509, 123 N. W. 244, 26 L. R. A. (N. S.) 73.

[5] The first word in the plaintiff's trade-name is "Star," and the first word in defendant's "Rochester." The word "Rochester" chosen by the defendant is not well calculated to differentiate the two concerns in the mind of the trade. Plaintiff's concern being known to be located at Rochester, the use of the word "Rochester," in itself, would not indicate to the tradesman in St. Louis a new departure. Dyment v. Lewis, supra. And not much importance should be attributed to the word "Star" in the plaintiff's title, because that word has been chosen in such a multitude of instances for almost every kind of a product that it has no longer any marked and salient individuality. However that may be, the proofs in the case show that the names, coupled with a similarity of advertising matter, were confusing to the tradesmen who were accustomed to deal with the plaintiff and desired to continue those dealings. This makes the criticism of unfair competition properly apply in this instance.

The circular letters sent out by defendant to the trade soliciting patronage were received very generally by the plaintiff's customers. The letter head has upon the left-hand side a picture of a large building, underneath which are the words "Home of Rochester Egg Carriers and Trays," and on the right half of the letter head is the wording "Rochester Egg Carrier & Tray Mfg. Co., Manufacturers of Egg Carriers, Trays and Specialties, 855 Maple Street Both 'Phones." The first circular was signed "Rochester Egg Carrier & Tray Mfg. Co." It states:

"We beg to announce that we have incorporated a company under the name of Rochester Egg Carrier Co., to manufacture Rochester Egg Carriers and Trays."

And without quoting further, it is so equivocal in language as to make it very easy for some of the recipients of the circular to assume that the going concern with which they had been dealing had just been incorporated under the name "Rochester Egg Carrier Co.," but was continuing to use the balance of its former name, "and tray manufacturing," for trade purposes. Such an impression would be strengthened by the use of the expression "Home of Rochester Egg Carriers and Trays," which, before any carriers or trays had been marketed by the defendant, would be apt to be considered as picturing the habitat of an established concern that had acquired a reputation already known to the persons to whom the circular might come.

The last circular sent out by the defendant, after the action was

commenced and not long before the trial, under the same letter head begins as follows:

"Gentlemen: The writer has recently assumed the selling end of the Rochester Egg Carrier and Tray. In going over the correspondence we had with you I find that you have not sold as many of our goods as you ought to, which has not been altogether your fault."

After urging greater activity in pushing "our carrier and tray," the letter ends,

"Thanking you for an early reply which I await with interest, with kindest regards beg to remain,
"Very truly yours,                    Rochester Egg Carrier Co.,
                                       ——————, Pres."

The name of the defendant's president, Mr. Nagle, was signed in the blank line before "Pres." It is not hypercritical to say that the letter just quoted might strike a hurried reader as indicating that there had been effected some new selling arrangement between the old concern with which he had been formerly dealing under which the product which he had been accustomed to buy was to be marketed in the future through Mr. Nagle's selling bureau.

If these two circulars are read carefully by one who, while reading, has in mind the fact that there are two concerns in Rochester manufacturing egg carriers and trays, there will probably be no great danger of confusion. Read, however, by one not aware at the moment that there are these rival companies, the result would very likely be confusion. The circulars sent out intermediate the first and last are not open to this criticism, except as to the letter head and the use of the name at the end, "Rochester Egg Carrier & Tray Mfg. Co."

The price lists and advertising cards sent out by the defendant in some instances are distinct and free from objection; in other instances they are open to the charge of intentional simulation in color, type, arrangement of pictures, sequence of ideas, display of prices, etc. In the latter instances, the copying is not exact, but it is such a close approach as to invite the criticism which is placed upon it.

In short, allowing full play for those analogies which are inevitable in the advertising of two concerns manufacturing and selling the same line of goods, there is, nevertheless, altogether too much similarity in the literary output of the two concerns to enable defendant to escape entirely the charge of intentional imitation for the purpose of deceiving the public and diverting to the defendant the customers who intended to deal with the plaintiff according to their wont.

The patent laws aside, the defendant has the right to make these egg carriers and trays and to advertise that fact, and to acquaint the public with his wares by true pictures and appropriate descriptions. Plaintiff cannot claim a preferential right to any certain type or mode of arrangement of price lists or size or color of cards. These things are all open to defendant's use. But if the combination of color, size, type, sequence of matter, arrangement of headings, etc., is such that the defendant's advertising approaches so closely to plaintiff's previously circulated advertising matter that the purchasing public, reading and being misled by the same, may buy defendant's goods, while

intending to buy of plaintiff, the plaintiff has a just complaint for which he should be awarded redress.

, It may be difficult to draw the line of demarcation with precision between those similarities which are natural and unavoidable and those which are intentionally chosen. Under the circumstances developed here it would seem as if the defendant should be enjoined from using the words "and tray manufacturing" as an addition to its legitimate corporate name, and it should be enjoined also from sending out any more circulars or advertising matter in which the arrangement of pictures and headlines, style of type and paragraphing are so closely imitative of the advertising matter of the plaintiff as naturally to cause confusion and doubt as to the identity of the concern from which the advertising matter emanates. That such confusion has arisen in the trade by reason of these similarities thus deliberately adopted by the defendant is abundantly proved from the depositions of many persons in the trade, and more is likely to occur with consequent loss to the plaintiff in trade diverted by reason of these unfair competitive methods, unless they are abandoned.

Formal findings and proposed decree may be prepared and submitted to the attorneys for the defendant and settled by the court on two days' notice. Costs are allowed the plaintiff.