ST. PAUL ELECTRIC CO. et al. v. McCRUM–HOWELL CO.

(Circuit Court of Appeals, Eighth Circuit. August 21, 1911.)

No. 3,491.

TRADE-MARKS AND TRADE-NAMES (§ 68*)—PROTECTION OF PROPERTY RIGHTS—UNFAIR TRADE.

The manufacturer of an electric suction cleaner, for domestic use, not protected by patent or trade-mark, *held* not entitled to a preliminary injunction to restrain as unfair trade the making and selling by defendant of a similar article at a much smaller price, merely because, for practical and economical reasons, the materials and form of the two articles were substantially alike, nor because defendant may have designed to obtain some advantage from complainant's advertising, where it was not shown that it attempted or intended to sell its machine as that of complainant, but plainly marked it by a plate giving it a different name.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 79; Dec. Dig. § 68.*]

Appeal from the Circuit Court of the United States for the District of Minnesota.

Suit in equity by the McCrum-Howell Company against the St. Paul Electric Company and B. B. Downs. From an order granting a preliminary injunction, defendants appeal. Reversed.

John E. Stryker, for appellants.

Hillary C. Messimer (A. C. Paul, on the brief), for appellee.

Before ADAMS and SMITH, Circuit Judges.

ADAMS, Circuit Judge. This is an appeal from an order granting a preliminary injunction against alleged unfair trade. As orders of this kind depend largely upon the judicial discretion of the trial judge, a strong showing of error, amounting to an abuse of discretion or a plain violation of some equitable principle, must be made to appear before we disturb them. In this case, however, the trial judge, as disclosed by his opinion, did not predicate his order upon a conviction that the facts of the case warranted injunctive relief. He strongly intimated the contrary, but paid respect to that comity which he thought should obtain in cases where a court of concurrent jurisdiction had already taken action. A preliminary injunction had before then been granted by the Circuit Court of the Northern District of Illinois in favor of this appellee against a party for doing practically the same thing complained of in the present case. That injunctive order, however, has since been reversed by the Court of Appeals for the Seventh Circuit. Pope Automatic Merchandising Company v. McCrum-Howell Company et al., 191 Fed. ——. We therefore approach a decision of this case without any embarrassment arising from the exercise of judicial discretion by the court below.

The order appealed from enjoined the appellants, the St. Paul Electric Company and B. B. Downs, defendants below, from manufacturing, selling, or offering for sale certain electric suction cleaners in form, structure, and color like the device of complainant below, the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

McCrum-Howell Company. Complainant's cleaner was composed of a small motor, a fan, a suction nozzle, and discharge orifice communicating with a receptacle suitable for collecting the dust or waste taken up from the floor, together with a handle by which it could be driven over the floor; and the operative parts were inclosed in an aluminum case. The device was light, easily handled, and well calculated in form, material, and structure for convenient use by the housewife or maid. The complainant had no patent on the mechanism, or any feature of it, and claimed no infringement of any trade-mark. Its only complaint was that of unfair competition in trade. It had advertised and sold its cleaner under the trade-name of "The Richmond," in connection with its own corporate name, "McCrum-Howell Company," and had sold it at the price of $65.

The defendants made no appropriation of complainant's trade or corporate name. They believed an effective cleaner capable of doing the work could be manufactured and sold at a price not exceeding $35, and proceeded to construct one. They necessarily employed a motor, fan, and nozzle, with a discharging orifice, a receptable for taking the dust and dirt taken up from the floor, and a handle. They also employed an aluminum casing to cover the operative parts, quite similar in appearance to that employed by complainant. The handle of both was of a length to comfortably permit the operator to move it along over the floor, and the casing of both conformed to the contour of the motor and the fan. In short, it may be said the defendants employed practically the same elements, of the same color, and in the same combination, to accomplish the same result, as complainant did. They had as much right to do so as complainant had; the latter having acquired no monopoly in the elements, or any combination of them. This, however, did not confer upon defendants the right to so simulate the product of complainant as to deceive the public, or palm off their product as and for the product of the latter. The law imposed upon them the obligation of good faith and fair and honest competition. Did they violate this obligation? It is claimed they did, because their cleaner looked like complainant's cleaner. But this could not be reasonably avoided. If both were engaged in manufacturing the common house broom, it is apparent the product of both would look substantially alike. So in this case both were engaged in manufacturing a recognized type of electric cleaner, and obviously their product would carry a marked resemblance.

Again, it is said, because the defendants adopted substantially the same form, color, and size of parts as complainant had done, they thereby evidenced a purpose to defraud. This may well be answered in the language of Baker, Circuit Judge, in Pope Automatic Merchandising Co. v. McCrum-Howell Company, supra:

"In short, appellee [McCrum-Howell Company] uses the most efficient and most economically manufactured form into which the mechanical combination can probably be embodied. Not a line nor a curve, not a mark, not a bit of superfluous material, for embellishment or distinction. Nothing but the name-plate. If appellants should be required to give a square or hexagonal or other than cylindrical form to the outer surface of the casings, considerations of cost of the superfluous material and labor might prevent them from competing with appellee in the manufacture and sale of a mechanism that

was equally open to both.  *  *  *  Aluminum is the metal used. Its advantages in strength, in durability, in lightness of weight, and in freedom from tarnish have led to its adoption for various utensils and tools. Appellee can have no monopoly of its use for this tool. In both cleaners the metal is unpainted. If appellants should be compelled to paint their cleaner a distinctive color, they would increase their manufacturing cost, and would also lose one of the main advantages of a metal that was as open to them as to appellee, and that was obviously the best as a material as the cylinder was as a form."

It is claimed that defendants simulated complainant's brush in the nozzle of its cleaner; but the showing in respect of this matter was not sufficiently clear or specific to warrant a preliminary injunction.

Again, one of the affiants in behalf of complainant swore that "Mr. Downs," who was practically the owner of the St. Paul Electric Company, and who actually brought out and developed the defendants' cleaner, "thought it would be a good idea to have a machine like the 'Richmond,' but to be sold at a lower price, and that in this way they could get considerable advantage from the advertising the Richmond people were doing." It cannot escape observation that no wrongful act is here charged. At best a mental state only is disclosed; one which might or might not ripen into an act.

But, passing this somewhat critical consideration of the affidavit, and assuming Downs' purpose to have been to gain some advantage from complainant's advertising the merits of an electric cleaner, we do not think that fact would warrant injunctive interference. The motive of an act entirely lawful cannot in and of itself condemn the act. It was not only lawful, but eminently praiseworthy, to design and introduce into commerce an article of daily use like an electric cleaner, for a price greatly less than a competitor was charging, and thereby relieve the public from an excessive exaction for it. The mere fact, if it was a fact, that another had broadly advertised the merits of the article, does not deprive the last comer of his right to enter the field of competition. Otherwise extensive advertising of an article of common use by one would effectually prevent another from entering the field of competition with him, and the monopoly of the first comer would be as complete as even a valid patent or trade-mark could secure.

The foregoing are the main reasons argued in support of complainant's contention in this case. But they, in our opinion, are insufficient. This is especially true in the light of the further fact that there is no showing that defendants ever actually undertook to palm off any of their goods as those of the complainant. In fact, the defendants' goods were always advertised and sold as "The Downs" suction sweeper, and this truthful declaration of the origin of their goods distinctly appeared upon the face of their cleaner, upon a plate inserted there for that purpose. In view of all these facts, we think there was no such threatening or imminent trespass upon complainant's rights as to require the issue of a preliminary injunction before a full hearing could have been had upon the merits. We agree with the conclusion reached in the Seventh circuit.

The order made below is reversed, and the cause remanded to the Circuit Court for further proceedings in harmony with this opinion.