### SENTCO, Inc. v. CANDLE-LITE CHEMICAL CO., et al.

Circuit Court, Dade County.

January 5, 1953.

Hal. H. McCaghren, West Palm Beach, and Allen Clements, Jr., Miami, for plaintiff.

Philip E. Paine, Miami, for defendant.

VINCENT C. GIBLIN, Circuit Judge.

The evidence has produced no substantial factual dispute.

In June, 1951, the plaintiff company began the manufacture and marketing of a unique insecticide vaporizer which the company's president had originated and designed. The device is an ordinary muffin cup (familiar to most housewives) to which wire stabilizers are soldered so that it may be attached to an electric light bulb. The plaintiff company also sells, for use in the vaporizer, an insecticide known as lindane, which is produced and distributed by a California chemical company. When the device, with lindane in the cup, is fastened to a lighted bulb the heat vaporizes the insecticide and the diffused fumes kill mosquitoes, flies, roaches and other insect pests within the area of penetration. The plaintiff company calls its product "Vap-O-Lite" and the trade-mark name is registered in the office of the secretary of state.

In September, 1951, the defendant company, which had been manufacturing and selling a larger and more expensive type of

vaporizer, began the production and marketing of an insecticide vaporizer with the plaintiff company's device. It is made of the same material and is the same size, shape, color and design. The same insecticide is sold for use with the vaporizer. The defendant company has given the name of "Exterm-O-Lite" to its product. The plaintiff company's packaging methods have been adopted by the defendant company, the written instructions issued by the former for the guidance of purchasers in the use of its vaporizer have been substantially copied by the latter, and the content of the defendant company's newspaper advertising has been substantially duplicated by the defendant company.

The evidence warrants the statement that the defendant company has deliberately imitated the plaintiff company's device, appropriated its ideas and methods and is sharing in a market created by the ingenuity, judgment and efforts of the plaintiff company's managing officer. There is no doubt that the defendant company, by selling its product at a lower price, has impaired the monopolistic advantage which otherwise the plaintiff would be enjoying.

The plaintiff company contends that the defendant company is guilty of unfair and illegitimate competition and seeks injunctive relief and damages.

Many courts in many cases have dealt with the problem here presented and I have been guided and impelled to a conclusion, by a wealth of authority (including the opinions and decisions in Candee Swan v. Deer & Co., 54 Ill. 439; Flagg Mfg. Co. v. Holway (Mass.), 59 N. E. 667; St. Paul Electric Co. v. McCrum-Howell, 189 Fed. 849; Pope v. McCrum-Howell, 191 Fed. 979; Crescent Tool Co. v. Kilborn & Bishop Co., 247 Fed. 300; Diamond Co. v. U. S. Co., 164 N. Y. Supp. 433; Estate Stove Co. v. Gray & Dudley, 41 Fed. 2d 462; and Kellogg Co. v. National Biscuit Co., 305 U. S. 111, 83 L. ed. 73).

The plaintiff company's vaporizer is not protected by a patent. While it is undeniably true that the defendant company is the beneficiary of the good will of the plaintiff company's product and is sharing in a market created by the latter and extended by its expenditures for advertising and other promotional purposes, the competition is not for that reason alone unfair and illegitimate. As the author observes, in Mims' Unfair Competition and Trade-Marks (vol. 1 at page 370), where there is no monopoly such as a patent confers anyone may reproduce an article originated by another and sell it with the representation that it is the same article so long as he excludes the notion that it is the other's article. Judge Learned Hand, voicing the court's opinion in Crescent Tool Co. v. Kilborn & Bishop Co., *supra*, said that "the defendant . . . may copy the plain-

tiff's goods slavishly down to the minutest detail; but he may not represent himself as the plaintiff in their sale."

An influencing factor in many of the decided cases has been the consuming public's interest in free enterprise and competition. In Kellogg Co. v. National Biscuit Co., *supra*, in which the Supreme Court of the United States held that the appellant had the right, in the absence of a protective patent, to produce and market a pillow-shaped shredded wheat biscuit which the appellee had originated, the court said that "sharing in the good will of an article unprotected by patent or trade-mark is the exercise of a right possessed by all and in the free exercise of which the consuming public is deeply interested." And it has been observed in several of the cases that to hold otherwise would be to grant gratuitously to the first manufacturer or producer of an unpatented article a perpetual monopoly more effective than that conferred by a patent, the life of which is limited to seventeen years.

Even in cases in which it has been shown that an unpatented article has become associated in the minds of the consuming public with its original manufacturer or producer and has thus acquired a "secondary meaning," it has been held that the original manufacturer or producer has no exclusive right to manufacture or produce the article. In such cases, however, it is incumbent on the reproducer to identify his product and distinguish it from that of the original manufacturer or producer.

The most that the plaintiff company in the instant case has shown is that it has created a demand for vaporizers of the type which it manufactures. It has not been shown that users or purchasers are interested in whether the device is manufactured by the plaintiff company or by another. The interest, so far as the evidence discloses, is in the device itself and not in its source. But even if it had been established by proof that vaporizers of the type produced and sold by the plaintiff company have become associated by users and purchasers with the plaintiff company, and that, therefore, the doctrine of "secondary meaning" is applicable, there is a want of proof that the defendant company has violated its duty to obviate confusion in the minds of the consuming public by distinguishing its product from that of the plaintiff company. By appropriate labels and markings, by an adequate display of its name as the manufacturer in its advertising and on its packages, and by the use of a distinctive and different name, "Exterm-O-Lite," the defendant company sufficiently identifies its product and distinguishes it from that of the plaintiff company.

The contention that the use by the defendant company of the name "Exterm-O-Lite" is an infringement of the plaintiff com-

pany's trade-mark, "Vap-O-Lite," need not be seriously considered. The only similarity in the two names is found in the use of the word "Lite" in each of the names. The weight of authority supports the logical view that where the last word of a trade-mark is the same and the preceding word or words are distinctly different no infringement exists.

Because of the views expressed, the plaintiff company's bill of complaint is dismissed with prejudice and it is required to pay the costs of the suit.