BOSTON FERRULE COMPANY *vs.* EDWIN A. HILLS & others.

Suffolk. January 25, 1893. — May 19, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, LATHROP, & BARKER, JJ.

*Equity — Objectionable Use by Tenant of Manufactory — Nuisance.*

The tenant of one story of a building used for manufacturing purposes may maintain a bill in equity to restrain the tenant of the story above, in the floor of which there are holes for the passage of belting which runs the machinery of both tenants, from allowing sand and acids used in his business, and the fumes of the acids, to come through the holes in the floor and injure the machinery and goods of the former.

BILL IN EQUITY, filed February 13, 1892, alleging that the plaintiff was engaged in the business of manufacturing and selling ferrules, and carried on its business of manufacturing on the third floor of the building numbered 291 Congress Street

in Boston in rooms leased by it from the owner of the building, by a written lease; that the term of the lease began on April 1, 1888, and the plaintiff then entered into occupation of the leased premises, putting therein delicate and expensive machinery necessary for its business, and the term had not yet expired; that the plaintiff had ever since that date carried on its business of manufacturing on the premises in question; that the defendants were engaged in the business of manufacturing and polishing mirrors and other glassware, and selling the same, and in the summer of 1888 they leased the fourth floor of said building from the owner thereof, took possession, and established their manufacturing business there; that power to run the machinery of the plaintiff and of the defendants was obtained from engines situated in the building below the third floor, and was conveyed to the premises of the plaintiff and defendants by means of belting; that, in order that the belting might run from one floor of the building to another, there were suitable holes made in the floor through which the belting passed; that there were several of such holes in the flooring separating the premises occupied by the plaintiff from those occupied by the defendants, and also numerous smaller cracks and crannies in the flooring; that the belting and holes in the floor were in essentially the same position and condition on April 1, 1888, and at the time when the defendants took possession, as they had since been; that, in carrying on its manufactures, the defendants used large quantities of sand and acids, and they allowed and had for a long time allowed the sand and acids, and the fumes of the acids, to sift and come through the holes, cracks, and crannies in the flooring and fall upon the premises occupied by the plaintiff, to the very great damage of the machinery, materials, and goods manufactured and in process of manufacture, particles of sand getting in the machinery and injuring and ruining it, and the acids and fumes of acids corroding the machinery, materials, and goods; that the defendants knew, when they entered into the occupation of the premises, the character of the plaintiff's business, and they had been since that time frequently notified by the plaintiff of the damage caused by the sand and acids, and requested to prevent a continuance thereof, but they continued to allow their sand, acids, and fumes of acids to come upon the

plaintiff's premises; that the plaintiff's business was suited to the locality and building where it is situated; and that the plaintiff was without an adequate remedy at law.

The prayer of the bill was that the defendants might be enjoined from allowing sand, acids, and fumes of acids to come upon the premises leased and occupied by the plaintiff from the premises leased and occupied by the defendants; and that the defendants might be decreed to pay a certain sum as damages to the plaintiff.

The defendants demurred to the bill, and assigned as grounds of demurrer: 1. Want of equity. 2. That the bill did not allege due care on the part of the plaintiff, and did not charge that the defendants had been guilty of any negligence or want of care in the premises. 3. That the plaintiff had a full, adequate, and complete remedy at law.

At the hearing, the demurrer was sustained, and the bill dismissed; and the plaintiff appealed.

*S. Williston,* for the plaintiff.

*H. L. Harding & J. W. Austin, 2d,* for the defendants.

HOLMES, J. The fair interpretation of the plaintiff's bill is that the floor above its rooms naturally and properly has holes in it, and that the defendants knowingly carry on their business in such a way as to send fumes of acid and large quantities of sand through these holes upon the plaintiff's premises, and thereby to corrode and spoil its machinery and goods.

As between adjoining proprietors, one of them has no right as against the others to do what is complained of here, and it would be no answer to an action to say that the plaintiff might have shut his windows. There would be no need to allege in terms that the business was unsuitable to be carried on in that place, or that there was negligence in the mode of carrying it on. As the damage was a manifest consequence of the defendants' business, the fact that they could not help it if they carried on that business would be immaterial. See the form of declaration in *Tipping* v. *St. Helen's Smelting Co.* 4 B. & S. 608, and *St. Helen's Smelting Co.* v. *Tipping,* 11 H. L. Cas. 642.

The only justification that could be urged would be that the interests of adjoining owners necessarily conflict, that they are both intrinsically meritorious, that the law has to adjust them

by drawing a quasi physical line, and that the damage complained of was on the right side of that line and must be put up with by the plaintiff, as was held, for instance, in *Middlesex Co.* v. *McCue*, 149 Mass. 103, and *Rogers* v. *Elliott*, 146 Mass. 349. But if the allegations in regard to the injury were fully proved, there can be no question that this defence would not prevail. The discharge of acid fumes upon neighboring land in sufficient quantities to do substantial harm is deemed so clearly beyond the limit of reasonable use of a man's premises that courts have held as matter of law that it is actionable.     *Wesson* v. *Washburn Iron Co.* 13 Allen, 95, 104.     *Rex* v. *White*, 1 Burr. 333. *Crump* v. *Lambert*, L. R. 3 Eq. 409.     *Cooke* v. *Forbes*, L. R. 5 Eq. 166.     This may be subject to the question of the uses to which the land in the neighborhood is adapted, but that question is not before us at this stage.

If the defendants are not liable, supposing the damage to be under their control as alleged, it must be on the ground that tenants of different floors of the same manufacturing building have a right to do more towards making each other's premises uninhabitable than owners of adjoining houses in a city could do.     As any line of adjustment between conflicting rights must be drawn on practical grounds, there is no doubt that it may vary under different circumstances.     For instance, in England, in view of the national importance of their great manufactures, juries are instructed that, in counties where great works are carried on, parties must not stand on extreme rights.     *St. Helen's Smelting Co.* v. *Tipping*, 11 H. L. Cas. 642.     But we cannot rule, as matter of law, that the defendants are not liable.     It may be said that the plaintiff need not have hired rooms in this building, and that, if it did, it took the risk.     No doubt, when once it is decided that a certain liability or risk shall be attached to a voluntary relation, the party entering into that relation takes that risk.     But what risks shall be attached to any relation is a pure question of policy in the first instance.     The argument is, that in a broad sense the plaintiff has come to the nuisance, even if, as here, the plaintiff's lease is earlier than the defendants'.     But a man is as free not to buy the fee as he is not to hire, and it is wholly immaterial that a purchaser has come to the nuisance.     *Commonwealth* v. *Upton*, 6 Gray, 473, 475.

*Tipping* v. *St. Helen's Smelting Co.* L. R. 1 Ch. 66. It seems that the law is the same as to lessees. Wood, Nuisances, (2d ed.) §§ 574, 575.

If there are any special reasons why the defendants should be allowed to do what they do, they should be alleged in the answer. The question before us is whether there is a general right to invade lower premises with acid fumes and sand, in the mode described, in a manufacturing building, if the aggressor finds it necessary for his business. We are not prepared to admit the existence of such a right.　　　　　*Demurrer overruled.*