AMERICAN WALTHAM WATCH COMPANY *vs.* UNITED STATES
WATCH COMPANY.

Suffolk. January 24, 1899. — March 3, 1899.

Present: HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Trademark — Injunction — Equity.*

A manufacturer of watches in Waltham will be enjoined, upon a bill in equity by
another and the first manufacturer there, from using, in advertising his watches,
the combined words "Waltham Watch" or "Waltham Watches," it having
been found at the hearing that the word "Waltham," originally used by the
plaintiff in a merely geographical sense, by long use in connection with his
watches had come to have a secondary meaning as a designation of the watches
which the public had become accustomed to associate with the name; and will
be enjoined further against using the word "Waltham" or "Waltham, Mass.,"
upon the plates of his watches without some accompanying statement which
shall distinguish clearly his watches from those made by the plaintiff, it having
been found at the hearing that a deceitful diversion of the plaintiff's custom is
the effect and intended effect of the words in question, that it is practicable to
distinguish the defendant's watches from those of the plaintiff, and that it ought
to be done.

BILL IN EQUITY, filed October 15, 1890, and amended September 22, 1898, to restrain the use of the word "Waltham"
on watches made by the defendant, to the detriment of the
plaintiff's business as a manufacturer of watches in Waltham.
Hearing before *Knowlton,* J., who, with the consent of the
parties, reported the case for the consideration of the full court.
The facts appear in the opinion.

*W. A. Munroe & F. P. Fish,* for the plaintiff.

*C. Browne & O. R. Mitchell,* for the defendant.

HOLMES, J. This is a bill brought to enjoin the defendant
from advertising its watches as the "Waltham Watch" or "Waltham Watches," and from marking its watches in such a way
that the word "Waltham" is conspicuous. The plaintiff was
the first manufacturer of watches in Waltham, and had acquired
a great reputation before the defendant began to do business.
It was found at the hearing that the word "Waltham," which
originally was used by the plaintiff in a merely geographical
sense, now, by long use in connection with the plaintiff's

watches, has come to have a secondary meaning as a designation of the watches which the public has become accustomed to associate with the name. This is recognized by the defendant so far that it agrees that the preliminary injunction, granted in 1890, against using the combined words " Waltham Watch " or " Waltham Watches " in advertising its watches, shall stand and shall be embodied in the final decree.

The question raised at the hearing, and now before us, is whether the defendant shall be enjoined further against using the word " Waltham," or " Waltham, Mass.," upon the plates of its watches without some accompanying statement which shall distinguish clearly its watches from those made by the plaintiff. The judge who heard the case found that it is of considerable commercial importance to indicate where the defendant's business of manufacturing is carried on, as it is the custom of watch manufacturers so to mark their watches, but nevertheless found that such an injunction ought to issue. He also found that the use of the word " Waltham," in its geographical sense, upon the dial, is not important, and should be enjoined.

The defendant's position is that, whatever its intent and whatever the effect in diverting a part of the plaintiff's business, it has a right to put its name and address upon its watches; that to require it to add words which will distinguish its watches from the plaintiff's in the mind of the general public is to require it to discredit them in advance; and that, if the plaintiff by its method of advertisement has associated the fame of its merits with the city where it makes its wares instead of with its own name, that is the plaintiff's folly, and cannot give it a monopoly of a geographical name, or entitle it to increase the defendant's burdens in advertising the place of its works.

In cases of this sort, as in so many others, what ultimately is to be worked out is a point or line between conflicting claims, each of which has meritorious grounds and would be extended further were it not for the other. *Boston Ferrule Co.* v. *Hills,* 159 Mass. 147, 149, 150. It is desirable that the plaintiff should not lose custom by reason of the public mistaking another manufacturer for it. It is desirable that the defendant should be free to manufacture watches at Waltham, and to tell the world that it does so. The two desiderata cannot both be had to their full

extent, and we have to fix the boundaries as best we can.   On the one hand, the defendant must be allowed to accomplish its desideratum in some way, whatever the loss to the plaintiff. On the other, we think the cases show that the defendant fairly may be required to avoid deceiving the public to the plaintiff's harm, so far as is practicable in a commercial sense.

It is true that a man cannot appropriate a geographical name, but neither can he a color, or any part of the English language, or even a proper name to the exclusion of others whose names are like his.   Yet a color in connection with a sufficiently complex combination of other things may be recognized as saying so circumstantially that the defendant's goods are the plaintiff's as to pass the injunction line.   *New England Awl & Needle Co.* v. *Marlborough Awl & Needle Co.* 168 Mass. 154, 156.   So, although the plaintiff has no copyright on the dictionary or any part of it, he can exclude a defendant from a part of the free field of the English language, even from the mere use of generic words unqualified and unexplained, when they would mislead the plaintiff's customers to another shop.   *Reddaway* v. *Banham*, [1896] A. C. 199.   So the name of a person may become so associated with his goods that one of the same name coming into the business later will not be allowed to use even his own name without distinguishing his wares.   *Brinsmead* v. *Brinsmead*, 13 Times L. R. 3.   *Reddaway* v. *Banham*, [1896] A. C. 199, 210. See *Singer Manuf. Co.* v. *June Manuf. Co.* 163 U. S. 169, 204 ; *Allegretti Chocolate Cream Co.* v. *Keller*, 85 Fed. Rep. 643. And so, we doubt not, may a geographical name acquire a similar association with a similar effect.   *Montgomery* v. *Thompson*, [1891] A. C. 217.

Whatever might have been the doubts some years ago, we think that now it is pretty well settled that the plaintiff merely on the strength of having been first in the field may put later comers to the trouble of taking such reasonable precautions as are commercially practicable to prevent their lawful names and advertisements from deceitfully diverting the plaintiff's custom.

We cannot go behind the finding that such a deceitful diversion is the effect and intended effect of the marks in question. We cannot go behind the finding that it is practicable to distinguish the defendant's watches from those of the plaintiff, and

that it ought to be done. The elements of the precise issue before us are the importance of indicating the place of manufacture and the discrediting effect of distinguishing words on the one side, and the importance of preventing the inferences which the public will draw from the defendant's plates as they now are, on the other. It is not possible to weigh them against each other by abstractions or general propositions. The question is specific and concrete. The judge who heard the evidence has answered it, and we cannot say that he was wrong.

*Decree for the plaintiff.*