MUNCIE PULP COMPANY v. MARTIN ET UX.

[No. 2,957.  Filed December 21, 1899.]

WATERS AND WATER COURSES.—*Pollution.—Damages.—Complaint.*
—Where a complaint for the recovery of damages for injury to the
property of plaintiff resulting from the pollution of a stream charged
defendant with continuously emptying into the stream from its
pulp factory, located on the stream above plaintiff's farm, refuse
from the mill, containing acids and other unwholesome ingredients,
rendering several acres of the farm and the water in the stream un-
fit for use, and destroying the timber, it was not necessary to allege
that the use defendant made of the stream in carrying on its busi-
ness of manufacturing pulp was unreasonable or unnecessary.
*pp. 558-562.*

DAMAGES.—*Instructions.*—Where, in an action for damages to farm
land caused by the pollution of a stream, an instruction was given
at the request of defendant limiting the measure of damages to the
difference between the rental value of the farm as it was with the
polluted stream and as it would have been if the stream had not
been polluted, and such additional damages as resulted from the de-
struction of timber, a verdict will not be set aside as excessive,
where it is not manifest from the special findings that the jury did
not keep within the rule laid down in the instruction as to the
measure of damage. *pp. 563, 564.*

From the Delaware Circuit Court.  *Affirmed.*

*Ferdinand Winter, J. W. Ryan* and *W. A. Thompson,*
for appellant.

*R. S. Gregory, O. J. Lotz, A. C. Silverburg* and *R. C.
Griffith,* for appellees.

BLACK, J.—The appellant has questioned the sufficiency
on demurrer of the first paragraph of the appellees' com-
plaint.  There were two paragraphs, each for the recovery
of damages for injury to the property of the appellees
through the pollution of a certain stream called Buck creek,
which flowed through the farm of the appellees, the com-
plaint charging the appellant with continuously emptying
into the stream from its pulp factory, located on the stream

above said farm, the refuse from the mill, containing acids and other unwholesome ingredients, the sediment from which had accumulated and filled up the channel of the creek, and had spread over the lands of the appellees, rendering several acres untenantable and unfit for use, and had destroyed the growing timber upon about fifteen acres, and had rendered the water of the creek unfit for use for watering stock and other farm uses, and had made the lands of the appellees practically worthless and unmarketable, all to the damage of the appellees in a specified sum.

The trial involved both paragraphs of the complaint, the second much more elaborate than the first, and such defenses as might be shown under the general denial. There was a general verdict for the appellees for $2,000, and the jury returned special findings in answer to interrogatories.

The only objection urged to the first paragraph of complaint is that it was not alleged that the use which the appellant made of the stream in carrying on its business of manufacturing wood-pulp was "unreasonable or unnecessary."

If water coming to the plaintiff's premises is impaired in value for the ordinary uses of life, or for special lawful uses, by reason of any foreign substance imparted thereto by another from artificial causes, there is a nuisance, and the burden of establishing both these propositions is upon the plaintiff; "but when once established, the nuisance is made out, and the right of recovery can not be defeated otherwise than by the establishing of a right by grant or prescription, or by express license from the plaintiff. The usefulness of the works, their absolute necessity, nor the fact that they can not be carried on without producing the result in question, nor the fact that the highest degree of care and skill is exercised to prevent injury, will be no excuse." Wood on Nuisances, §436.

No doubt, merely slight injury to the water of a stream by pollution, which results from a reasonable use of it, is not actionable; but pollution, which substantially impairs its

value for the ordinary uses of life, or renders it to a measurable degree unfit for domestic purposes, or which, by causing offensive or unwholesome odors or vapors to arise, impairs the comfortable or the beneficial enjoyment of property in its vicinity, is a nuisance, and as such is actionable.

The maintenance of the nuisance in this case being a positive aggressive wrong, the question of negligence is not involved in an action for damages thereby caused. *City of Lebanon* v. *Twiford*, 13 Ind. App. 384; *Williamson* v. *Yingling*, 80 Ind. 379.

The case before us is not one wherein the defendant is charged with making some lawful natural use of his real property, or one wherein he is charged with producing damage by an occasional or temporary action in the preparation or adaptation by necessary and usual means of his real property for a lawful use; but it is one wherein he is charged with continuously doing that which diminishes the lawful use of the property of the plaintiffs, and thereby injures them materially, the injurious acts not pertaining to the development or use of the natural resources of the defendant's real property.

The necessary results of conducting a lawful business may constitute a nuisance, and there may be a recovery of damages to the extent of the sensible injury caused thereby, because one must so use his own as not to injure another. See *St. Helen's, etc., Co.* v. *Tipping*, 11 H. of L. Cas. 642; *Tipping* v. *St. Helen's, etc., Co.*, 4 Best & S. 608, 116 Eng. Com. L. 608, 616.

The case of *West Cumberland, etc., Co.* v. *Kenyon*, L. R. 11 Ch. D. 782, is said in Garrett on Nuisances, 119, to be a decision of little value, inasmuch as the court, in effect, found that the operations of the defendant had cast no additional burden on the plaintiff, and that, therefore, the latter had no cause of action; and a passage from the judgment of James, L. J., is quoted as instructive, of which the following is a part: "I have always understood that everybody has a

right on his own land to do anything with regard to the diversion of water, or the storage of water, or with regard to the usage of water, in any way he chooses, provided that when he ceases dealing with it on his own land, when he has made such use of it as he is minded to make, he is not to allow or cause that water to go upon his neighbor's land so as to affect that neighbor's land in some other way than the way in which it had been affected before."

In *Wood* v. *Waud*, 3 Exch. 746, 780, it was said, per Pollock, C. B.: "As the establishment of a manufacture rendering the air sensibly impure, by emitting noxious gases, would be actionable, so would it be if it rendered the water less pure by the admixture of noxious substances."

In *Banford* v. *Turnley*, L. J. 31, Q. B. (N. S.) 286, it was held that where a man by an act on his own land, such as burning bricks, causes so much annoyance to his neighbors as to amount, *prima facie*, to a legal nuisance, it is no answer that the act was done in a proper and convenient spot, and was a reasonable use of the land. See, also, *Stockport Waterworks Co.* v. *Potter*, 7 H. & N. 159.

In *Boston, etc., Co.* v. *Hills*, 159 Mass. 147, 34 N. E. 85, 20 L. R. A. 844, in holding that the tenant of one story of a building used for manufacturing purposes might restrain the tenant of the next story above, in the floor of which there were holes for the passage of the belting by which the machinery of both tenants was run, from allowing sand and acids used in the business of the tenant of the upper story, and the fumes of the acids, to come through the holes in the floor and injure the machinery and goods of the tenant of the lower story, it was said, per Holmes, J., that "there would be no need to allege in terms that the business was unsuitable to be carried on in that place, or that there was negligence in the mode of carrying it on; that as the damage was the manifest consequence of the defendants' business, the fact that they could not help it if they carried on the business would be immaterial. * * * The discharge of

acid fumes upon neighboring land in sufficient quantities to do substantial harm is deemed so clearly beyond the limit of reasonable use of a man's premises that courts have held as matter of law that it is actionable." It was further said: "If there are any special reasons why the defendants should be allowed to do what they do, they should be alleged in the answer. The question before us is whether there is a general right to invade lower premises with acid fumes and sand, in the mode described, in a manufacturing building, if the aggressor finds it necessary for his business. We are not prepared to admit the existence of such a right."

In this State it is provided by statute that whatever is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of property; so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action, which may be brought by any person whose property is injuriously affected or whose personal enjoyment is lessened by the nuisance; and that where a proper case is made, the nuisance may be enjoined or abated, and damages may be recovered therefor. §§290-292 Burns 1894, §§289-291 Horner 1897.

The remedy sought and afforded in the case before us is the recovery of damages, which will be allowed for many injuries and inconveniences when relief by the severe process of injunction would not be granted. We, however, express no opinion further than that the facts stated in the complaint were sufficient in an action for damages. See *Langsdale* v. *Bonton*, 12 Ind. 467; *Smith* v. *Fitzgerald*, 24 Ind. 316; *Ohio, etc., R. Co.* v. *Simon*, 40 Ind. 278; *Helwig* v. *Jordan*, 53 Ind. 21, 21 Am. Rep. 189; *Moses* v. *State*, 58 Ind. 185; *Haag* v. *Board, etc.*, 60 Ind. 511, 28 Am. Rep. 654; *Owen* v. *Phillips*, 73 Ind. 284, 291; *Hebron, etc., Co.* v. *Harvey*, 90 Ind. 192, 46 Am. Rep. 199; *Reichert* v. *Geers*, 98 Ind. 73, 49 Am. Rep. 736; *Burk* v. *Simonson*, 104 Ind. 173, 54 Am. Rep. 304; *Haggart* v. *Stehlin*, 137 Ind. 43, 22 L. R. A. 577.

Under the appellant's motion for a new trial and its motion to modify the judgment, it is contended for the appellant that the damages were excessive. In the discussion of this question counsel have not relied upon the evidence, but have based the claim upon answers of the jury to some of the interrogatories submitted by the appellant.

Among the instructions was one given at the request of the appellant limiting the measure of damages to the difference between the rental value of the farm of the appellees for each year from January 22, 1894 (the date at which the appellees became the owners of the farm), to September 2, 1897 (the date of the commencement of the action), as it was during each year, and what the rental value would have been per year for that time if the refuse of the appellant's plant had not been turned into the stream, and such additional damages as resulted from the destruction of timber.

The appellees occupied their farm during the period in question, and it is manifest that the expression "rental value" was intended by the court and the parties and understood by the jury to be equivalent to the value of the use of the farm.

It is claimed, however, that the jury besides awarding the value of certain timber trees which they found to have been destroyed and rendered worthless, and the rental value of the land, also included in the amount of the general verdict damages for other injuries. There is apparent confusion in the special findings, which may have been occasioned by the form of the interrogatories and a change in their form as they progressed upon the subject of damages. But the special findings relating to the damages, other than those relating to the timber, are capable of being construed as intended by the jury to relate only to depreciation in the value of the use of the farm, some of the answers of the jury relating to such diminution in certain respects, and others to such diminution in other respects; some of them covering all such diminution in particular respects for the

entire period, and others covering such diminution in other respects during the particular years separately considered. It is not manifest that the jury in their verdict did not keep within the rule of damages proposed by the appellant for their guidance, that they allowed anything for any species of injury other than those so prescribed, or that they duplicated the rental value in whole or in part in making up the amount of the general verdict. The judgment is affirmed.

Henley, J., absent.