### CORNING GLASS WORKS v. PASMANTIER et al.

District Court, S. D. New York.
Dec. 1, 1939.

478

Frank C. Cole, of New York City (Vernon M. Dorsey, of Washington, D. C., of counsel), for plaintiff.

Donald L. Brown, of New York City, for defendants.

WOOLSEY, District Judge.

For the reasons hereinafter stated my judgment in this cause is—

1. That the complaint be dismissed in so far as it claims infringement of the plaintiff's trade-mark Resistal or its so-called flame trade-mark.

2. That the defendants were guilty of unfair competition with the plaintiff in respect of their use of orange colored black edged labels put by them on the glass cooking ware for oven use which is the principal subject matter of this cause.

3. That accordingly the plaintiff may have an interlocutory judgment providing for an injunction against further sale of glass cooking utensils with such condemned labels attached, for a reference and for damages and an accounting as hereinafter prescribed.

4. That the defendants' counter claim be dismissed.

5. That under the final decree herein there shall not be any costs or disbursements allowed to either party in this cause, except such taxable costs and disbursements as may be incurred in respect of the reference for damages and an accounting hereby ordered. These costs and disbursements shall · be included in the final decree and be cast thereby on the defendants.

I. This cause involves a controversy as to alleged infringement of two trade-marks and for unfair competition between the Corning Glass Works, a corporation of New York State, and John L. Pasmantier & Sons, a partnership made up wholly of citizens and residents of that State.

II. The plaintiff's locus standi to maintain this suit is based—

1. On the fact that it is the result of a merger of the Macbeth-Evans Glass Company, a Pennsylvania corporation, with a previous Corning Glass Works, a New York corporation, which owned the trade-marks here relied on by the plaintiff —Registration No. 107,246 and No. 339,-017, and

2. That in the process of this merger and in order to safeguard the transfer of the said two trade-marks and many others, they were on December 22, 1936, assigned—with the goodwill attached to each of them—by the first Corning Glass Works to Amory Houghton, Esq., in trust, in contemplation of and for the purpose of accomplishing the merger, and· by· him on January 13, 1937, reassigned in discharge of· this trust to the new Corning Glass Works.

III. The plaintiff makes and sells, under the well known trade-mark Pyrex, pressed glass cooking utensils of two kinds, one of which is to be used in ovens and the other is to be used over an open flame. I am told that a different composition of glass is necessary for these two uses.

.The defendants are jobbers who sell pressed glass cooking utensils made only for use in ovens by the Dunbar Glass Corporation of Dunbar, West Virginia.

It is significant, I think, that the trade-mark Pyrex does not play any role whatever in· this cause.

Instead ·of relying ·on that mark the plaintiff bases its claim of infringement,—

First, on a. trade-mark Resistal, registered for glass by the plaintiff's predecessor on November 16, 1915, and renewed October 22, 1935, under which the plaintiff had once sold gauge glasses, retorts, etc., but had never sold glass cooking ware, and

Second, on a trade-mark registered January 21, 1936, said by witnesses to represent a flame, but .not described in any way in its registration, which the plaintiff uses only on the ware which it makes for use over a flame.

IV. The plaintiff's Resistal trade-mark is said to have been infringed by the defendants' use of the word Resista on some of the labels of its glass cooking ware for oven use, and the alleged flame trade-mark is said to have been infringed by the defendants' use of its torch trade-mark impressed into the .glass or used on the labels of most of its glass cooking ware for oven use.

1. As to the Resistal trade-mark, though not abandoned, admittedly it has not been used by the plaintiff since September 9, 1930.

It is not shown in this cause that it ever has been associated in the mind of the public in any way with the plaintiff's pressed glass cooking ware. I hold, therefore, it was not infringed by the use of the word Resista on ware of that kind sold by the defendants. Industrial Rayon Corporation v. Dutchess Underwear Corp., 2 Cir., 92 F.2d 33, at page 35, 36. For, as is said in that case at page 35 by Judge Augustus Hand—italics mine—"the critical question is whether, *under existing con-*

*ditions,* the mark signifies that the party claiming protection is the source ·of the merchandise."

Here Resistal .has not any such significance, although if it had Resista would, of course, have infringed it.

■ 2. In respect of the plaintiff's so-called. flame trade-mark No. 339,017, the question of infringement involves a visual comparison of that mark with the defendants' torch trade-mark, and, in my opinion, after careful consideration of the matter, the defendants' mark does not infringe.

3. Consequently, in respect of the trade-mark aspect of this cause, I hold that the Resistal trade-mark cannot properly be considered as involved herein, and the so-called flame trade-mark was not infringed.

■ IVa. The federal jurisdiction herein was originally based on the fact that the trade-marks above referred to were registered under the Trade Mark Act, 15 U.S.C.A. § 81 et seq. Having dismissed the complaint in respect of such trade-marks, I am left with a controversy as to unfair competition between citizens of the same State,—New York—and I should not take jurisdiction thereof if it were not for the gloss on Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. ·1148, found in the case of Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, at page 325, 59 S.Ct. 191, at page 196, 83 L.Ed. 195, wherein the Supreme Court spoke as follows: "In the Oursler Case there was a valid copyright which was held not infringed. Here the trial court determined the trade-mark was invalid. The Oursler Case held that where the causes of action are different, the determination that the federal cause fails calls for dismissal. But where there is only one cause of action we do not consider that the holding of the invalidity furnishes any basis for a distinction between this and the Oursler Case. Registration of· 'Nu-Enamel' furnished a substantial ground for federal jurisdiction. That jurisdiction should be continued to determine, on substantially the same facts, the issue of unfair competition."

I understand that where, as here, the *use* of the trade-mark is the basis of the federal claim for infringement, and the *method of using* the trade-mark is the real basis for the claim of unfair competition, the derivative jurisdiction prescribed by the Supreme Court may be invoked. This, of course, is in accordance with the wise principle of judicial husbandry, that—if jurisdictionally permissible—two causes should never be allowed to grow where at first there was but one. In the present case, therefore, I find that, having regard to the teaching of the Supreme Court in the cases to which I have just referred, and the facts herein shown, I am ineluctably forced to take derivative jurisdiction of this controversy between citizens of the same State.

V. In view of Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, it is now a work of supererogation to write a considered opinion on the facts or law in a non-jury cause or proceeding, for its place will be taken by formal findings of fact and conclusions of law separately stated.

In this proceeding, therefore, I will only refer to such facts as I think explain my decision and give a statement of my conclusions of law thereon.

The facts which I state must be supplemented by other facts· to be proposed by the plaintiff when it submits, in the method hereinafter prescribed, its findings for my approval.

VI. A. On May 27, 1919, the plaintiff's predecessor was granted as assignee two patents,—No. 1,304,622 and No. 1,304,623.

These patents covered formulae for making a glass which owing to its high heat resistance was suitable for fabrication into utensils or instruments to be used for culinary or laboratory purposes.

In the Sullivan and Taylor patent No. 1,304,622 there is a quite full description of the sizes and shapes of dishes to be made of the patented glass and the optimum forms for those dishes. are illustrated. Among other forms illustrated are the custard cup, the pie plate, the casserole and the baking dish which have been before me.

In addition to the patents just mentioned, the plaintiff acquired a considerable number of design patents on glass cooking utensils. Among these which have expired may be listed No. 48,169 on an oval pie plate; No. 48,241 on the round standard pie plate; No. 54,898 on the deep dish cooking vessel; No. 54,899 on a hexagonal pie plate; No. 55,366 on an oval cooking dish; No. 62,948 on a cooking dish cover; No. 62,949 on an oval or round cooking dish; No. 62,950 on a round cooking dish cover; No. 61,948 on a teapot;

No. 65,114 on a plate; No. 65,115 on a dish.

Some of the designs of the defendants which are here alleged to infringe plaintiff's exclusive rights are so nearly identic with the patented design as to make it practically impossible to distinguish between them.

These patents all expired before the defendants began the sale of glass cooking utensils for use in ovens; an examination of them, however, seems to show that in so far as the plaintiff thought it had exclusive rights to any design or shape here involved, it patented that design. In respect of such design patents as have expired anyone can now freely use the patented design.

■ Therefore, after the patents just referred to had expired there was a clear right for makers of pressed glass cooking utensils to manufacture utensils similar to those of the plaintiff's out of the same material as the plaintiff had used during its temporary patent monopoly. Indeed such right was the principal consideration for such monopoly. Patentees may not properly attempt to immortalize their patents by the use of trade-marks or counts in unfair competition.

For this reason other makers of pressed glass cooking utensils can now, to a certain extent, benefit by the goodwill which had been built up by the plaintiff in such utensils under its Pyrex trade-mark.

■ Since the patents just referred to have expired, it is quite clear that the similarities in shapes and sizes of the utensils or the color of glass out of which they are made may not form a basis for a claim of unfair competition. Kellogg Company v. National Biscuit Company, 305 U.S. 111, 120, 59 S.Ct. 109, 83 L.Ed. 73.

■ B. But the limitation on the defendants, as later comers than the plaintiff into this merchandising field, was that they must so dress their goods as to preclude potential confusion between their goods and the goods of the plaintiff on which its patents had expired.

It seems to me that the defendants have failed properly to keep their distance from the plaintiff in this respect.

The labels of the respective parties, hereinafter discussed, were pasted conspicuously on the glass cooking utensils both of the plaintiff and of the defendants, and as the glass of both parties was of about the same color and the shapes of the utensils were similar, the pasted labels involved the crux of the situation in so far as unfair competition is concerned for they alone could serve either as a means of almost certain confusion, or of a practically certain means of preventing confusion between the goods made by the plaintiff and those made for and sold by the defendants.

■ C. The Pyrex labels for glass utensils to be used in ovens were orange colored, shaped like the silhouette of a barrel, with black edging and black letters.

The defendants' first labels using the word Resista were of orange color and of a shield shape, with black edging and black letters. The defendants' next type of label was in the shape of a palette of orange color, and this approached even more nearly than did the defendants' first labels, to the labels of the Pyrex brand of ovenware, for they were similar in shape as well as in color.

The defendants' latest label is of a scarlet color, has the shape of a palette with a white torch in the center. It has a white border and white lettering. This label, in my opinion, though not far from the forbidden zone is outside it, and may be continued in use.

■ In deciding a cause of this kind, in order to be realistic, the Court must take the ensemble which the defendants have made up for the public display of their goods and compare that ensemble with the ensemble of the plaintiff.

It is in the labels only, I find, that the defendants have been guilty of unfair competition, for it is in the labels only that they have wrongfully too nearly approached the plaintiff in that part of the merchandising of glass cooking ware in which they were not free to do as they liked.

Whilst there cannot be a monopoly of a color qua color, or—outside of design patents—of a shape qua shape where the defendants have put labels of the same color and of substantially the same shape, with the same type and color of border and lettering as the plaintiff's on glass utensils of the same shape and color as those of the plaintiff, the defendants are obviously seeking by using a conspiracy of ingredients—some legal and some illegal—to batten on the goodwill of the plaintiff which was the first comer in the

482

glass cooking ware field. This a subsequent comer may not do. New England Awl & Needle Co. v. Marlborough Awl & Needle Co., 168 Mass. 154, 46 N.E. 386, 60 Am.St.Rep. 377, approved in Schlitz Brewing Co. v. Houston Ice & Brewing Co., 250 U.S. 28, 39 S.Ct. 401, 63 L.Ed. 822; American Waltham Watch Company v. United States Watch Co., 173 Mass. 85, 86, 87, 53 N.E. 141, 43 L.R.A. 826, 73 Am.St.Rep. 263.

Indeed, I think that in the last named case Mr. Justice Holmes, when he was a Justice of the Supreme Judicial Court of Massachusetts, gave in 1899 one of the best statements which I have ever found on the subject of the duty of a late comer into a merchandising field. He said in 173 Mass. at page 86, 53 N.E. at page 142, 43 L.R.A. 826, 73 Am.St.Rep. 263 (italics mine):

"In cases of this sort, as in so many others, what ultimately is to be worked out is a point or line between conflicting claims, each of which has meritorious grounds, and would be extended further were it not for the other. Boston Ferrule Co. v. Hills, 159 Mass. 147, 149, 150, 34 N.E. 85 [20 L.R.A. 844]. It is desirable that the plaintiff should not lose custom by reason of the public mistaking another manufacturer for it. It is desirable that the defendants should be free to manufacture watches at Waltham, and to tell the world that it does so. The two desiderata cannot both be had to their full extent, and we have to fix the boundaries as best we can. On the one hand, the defendant must be allowed to accomplish its desideratum in some way, whatever the loss to the plaintiff. On the other, we think, the cases show that the defendant fairly may be required to avoid deceiving the public to the plaintiff's harm, so far as is practicable in a commercial sense.

"It is true that a man cannot appropriate a geographical name; but neither can he a color, or any part of the English language, or even a proper name to the exclusion of others whose names are like his. Yet a color in connection with a sufficiently complex combination of other things may be recognized as saying so circumstantially that the defendant's goods are the plaintiff's as to pass the injunction line. New England Awl & Needle Co. v. Marlborough Awl & Needle Co., 168 Mass. 154, 156, 46 N.E. 386 [60 Am.St. Rep. 377]. So, although the plaintiff has no copyright on the dictionary, or any part of it, he can exclude a defendant from a part of the free field of the English language, even from the mere use of generic words, unqualified and unexplained, when they would mislead the plaintiff's customers to another shop. Reddaway v. Banham (1896) App.Cas. 199. So, the name of a person may become so associated with his goods that one of the same name coming into the business later will not be allowed to use even his own name without distinguishing his wares. Brinsmead v. Brinsmead, 13 Times Law R. 3; Reddaway v. Banham (1896) App.Cas. 199, 210. See. Singer Mfg. Co. v. June Mfg. Co., 163 U.S. 169, 204, 16 S.Ct. 1002 [41 L.Ed. 118]; Allegretti Chocolate Cream Co. v. Keller [C.C.] 85 F. 643. And so, we doubt not, may a geographical name acquire a similar association with a similar effect. Montgomery v. Thompson (1891) App.Cas. 217.

"Whatever might have been the doubts some years ago, we think that now it is pretty well settled that the plaintiff, merely on the strength of having been first in the field, may put later comers to the trouble of taking such reasonable precautions as are commercially practicable to prevent their lawful names and advertisements from deceitfully diverting the plaintiff's custom."

█ D. Since the trade-mark Resistal was never used on the plaintiff's pressed glass cooking ware and, as I have held, is not concerned in this cause, I hold that the defendants' use of the word Resista —not being an infringement of trade-mark—was not unfair competition with the plaintiff.

█ If the question of use of the words Ovenware or Ovenglas be claimed as unfair competition on the ground that Ovenware has a secondary meaning as plaintiff's product, the answer is that the word Ovenware was conclusively shown to have been used by other makers of cooking utensils, and that no secondary meaning as the plaintiff's product can be considered as attached to that word.

E. To summarize the situation:

The glass cooking ware made by the plaintiff and by the Dunbar Glass Company for the defendants are all substantially of the same color and of the same shape.

The trade-marks pressed into the glass are not readily observable on any of the

utensils unless the greatest care is taken to look at it in just the proper light.

The chief means of differentiating between the plaintiff's and the defendants' glass cooking utensils is by the printed colored labels which are pasted on the tops or bottoms thereof, and which by reason of the transparent quality of the glass, whereof they are made, are visible through it.

The defendants, however, did not attempt in the labels which they used on their first entry into the field and with which they still have some utensils marked, to get a label which by reason of its difference in color, shape and type of printing from the plaintiff's labels, would distinguish their glass ware from that of the plaintiff. Instead they sought to take advantage of their right to make the glass under the formulae and in the shapes of the plaintiff's expired patents, and added to the similarities thus inherent in the utensils, labels which were, in my opinion, far within the injunction line.

Therefore, I hold that the defendants were guilty of unfair competition in their use of the orange colored labels of the kind above described, and must be held liable for any damages suffered by the plaintiff due to such use by the defendants, and to any profits made by the defendants therefrom.

█ VII. As to the defendants' counter-claim, I do not think that the defendants have made out bad faith on the part of the plaintiff in its attempt to defend the rights which it considered that it had, and, as it has in part prevailed, the defendants' counter-claim must be dismissed. Cf. United States G. & P. E. Corp. v. Hanson-Van Winkle, etc., Co., 4 Cir., 104 F.2d 856, 861, 862.

█ VIII. In pursuance of Rule 52(a) of the Rules of Civil Procedure, the attorneys for the plaintiff must prepare in accordance with this opinion and submit to me through the Clerk's office findings of ultimate facts and the conclusions of law herein indicated.

I do not want any details of evidence submitted as findings of ultimate facts. But, as above indicated, there should be findings of fact additional to those herein mentioned in order that a full record of the situation now facing the plaintiff may be made and the juridical result of this carefully tried cause preserved.

All proposed findings of fact and conclusions of law submitted to me must be *typed in triple spacing* so that I may conveniently correct them if I wish to do so.

Attorneys for the plaintiff must give five days notice of their proposed findings of fact and conclusions of law to the attorneys for the defendants.

In submitting their findings of fact, the attorneys for the plaintiff must also submit under a separate cover, bound at the left side, a short memorandum indicating the pages of the evidence on which each finding proposed by them is based. It is not a very difficult matter to prepare this memorandum and make it possible for me to look up any question of fact about which I may be in doubt. All that is necessary is to give the number of the finding and to follow it with the numbers of the supporting pages or exhibits in the record of the trial.

Attorneys for the defendants, if they are so advised, may on the return day of such notice submit to me and serve on the plaintiff's attorneys criticisms of the findings of fact proposed by them.

As under Rule 52(a) only findings of fact and conclusions of law which I sign will be filed as part of the record herein, I suggest this course for the defendants' attorneys because counter findings will not avail them in any respect. They must take their objections, if any, to my findings and conclusions by way of appropriate assignments of error on any appeal which they may take.

█ After the findings of fact and conclusions of law have been signed by me, an interlocutory judgment for the plaintiff in accordance herewith may be submitted to me through the Clerk's office for signature.

IX. The interlocutory judgment, in addition to the injunction against any further sale by the defendants of utensils bearing the labels above condemned, will provide for a reference herein to Francis H. Horan, Esq., Special Master, to determine any profits made by the defendants and any damages suffered by the plaintiff solely by reason of the use by the defendants of the said labels.