## LONE RANGER, Inc., v. COX et al.
### No. 4873.

Circuit Court of Appeals, Fourth Circuit.

Jan. 5, 1942.

---

James H. Price, of Greenville, S. C. (James D. Poag, W. A. Bull, and James H. Price, Jr., all of Greenville, S. C., and Raymond J. Meurer, of Detroit, Mich., on the brief), for appellant.

C. Granville Wyche, of Greenville, S. C. (Alfred F. Burgess and Thomas A. Wofford, both of Greenville, S. C., on the brief), for appellees.

Before PARKER and DOBIE, Circuit Judges, and CHESNUT, District Judge.

PARKER, Circuit Judge.

This is an action for damages and for injunction based upon alleged infringement of copyright and unfair competition. The plaintiff is the Lone Ranger, Inc., a Michigan corporation, which since the year 1933 has been broadcasting over the radio copyrighted dramatic serial stories featuring the heroic exploits of a mythical western cowboy, "The Lone Ranger", who rides about masked and on a white horse, called "Silver", championing the cause of the oppressed and redressing the wrongs of the community. Plaintiff has licensed a comic strip, entitled "The Lone Ranger", appearing in a number of newspapers and has licensed the use of the name, "The Lone Ranger", as a trademark to vendors of various articles. The radio programs of plaintiff are broadcast from one hundred or more radio stations, are very popular and appeal particularly to children. A "Lone Ranger" safety club, promoted in connection with the programs, has attained a membership of between three and four million young people.

The defendant Powell is a motion picture actor, who in 1937 played the part of Allan King as the "Lone Ranger" in a motion picture produced under licence from plaintiff. He has been appearing, under contract with the defendant Cox, in a small

circus in which he takes the part of the "Lone Ranger", riding masked on a white horse and giving the cry "Hi, yo Silver" or "Hi, yo, Silver, away!", which is the distinctive call of the "Lone Ranger" to his horse in each of plaintiff's radio programs. He is advertised by the circus as the original "Lone Ranger" or the "Lone Ranger" in person. The words "talking picture" or "of talking picture fame" are prefixed or added to the words "Lone Ranger" in the advertisements, but these qualifying words are in smaller lettering than "Lone Ranger", which is given great prominence. In some, the call to the horse, "Hi, yo, Silver" is prominently displayed. Newspaper advertisements are addressed particularly to children and stress that the "Lone Ranger" is appearing in person. In all, the effect of the advertisements is to create the impression that the original "Lone Ranger", made famous by the radio programs, is appearing with the circus—a result more easily achieved because the public interested is composed very largely of children.

The plaintiff did not produce its copyrights in evidence, relying upon the principles of unfair competition. Its contention is that the advertising and appearances of Powell are unfair in that they are an attempt on his part to appropriate to himself a portion of the good will which plaintiff has built up in connection with its radio programs, and in that the inevitable effect of this infringement upon its rights is to destroy the element of mystery surrounding the character of the "Lone Ranger" as presented by its programs and show him to be a very commonplace person in whom the young people have no further interest, once he has been seen. Plaintiff relies, also, upon a consent decree entered by the United States District Court for the Middle District of Pennsylvania, in which the same defendants were enjoined at the suit of plaintiff from using the name "Lone Ranger" except with reference to the fact that Powell had played the part of Allan King in the motion picture serial of that name, from using the phrases "Hi, yo, Silver" and "Hi, yo, Silver, away!", and from representing in any way, or doing anything that would lead the public to believe, that Powell was identified with the radio programs of plaintiff.

The answer of the defendants denies any representation that Powell had had anything to do with the radio programs. They claim the right to advertise Powell as the actor who had played the part of the "Lone Ranger" in the motion picture of that name, and justify the use of the phrases "Hi, yo, Silver" and "Hi, yo, Silver, away" on the ground that since the entry of the decree in the Middle District of Pennsylvania, a motion picture under the name of "Hi-Yo, Silver" has been licensed by plaintiff and has been made up of cuts from the original "Lone Ranger" picture. These defenses were accepted by the court below and relief was accordingly denied plaintiff.

Quite apart from any rights under the Pennsylvania decree or the copyrights relied on, we think that plaintiff, under the principles of unfair competition, was entitled to relief. Under the name or title of "The Lone Ranger", plaintiff had built up a radio feature of great value. The exploits of this mythical character, as portrayed in the radio programs, had become of great interest to countless young people throughout the country and were a source of large revenue to plaintiff. Defendants were attempting to avail themselves of the good will created by the broadcasting of the radio programs and the advertising connected therewith, including the "Lone Ranger" safety clubs. Their conduct in advertising Powell as the "Original Lone Ranger" was manifestly calculated and intended to lead the public to believe that he was the "Lone Ranger" of the radio programs and to attract to the circus those who were interested in the programs and particularly the young people who were members of the safety clubs. The fact that the advertisements contained a reference to the talking picture did little, if anything, to minimize the deception of the children to whom they were primarily addressed, and this deception was accentuated by use of the call "Hi, yo, Silver" in some of the advertisements and in Powell's act in the circus. The defendants were in the business of furnishing entertainment, just as was plaintiff, and there can be no doubt but that they were attempting to pass off their show as being identified with the radio programs of plaintiff, or at least as being connected in some manner therewith, and thus to benefit from the good will which had been built up by plaintiff through its broadcasts and advertising.

■ We entertain no doubt as to the power and duty of a court of equity to afford relief under such circumstances. While the case presented is not precisely similar to that kind of unfair competition

involving the use of a corporate or business name or to the ordinary case involving the unfair use of trademarks and trade names, the principle involved is the same as that recognized in these cases, viz., that a court of equity should enjoin any form of "passing off" which involves fraudulent appropriation, through devices calculated to deceive or mislead the public, of the business or good will which another has built up. In Grand Lodge I. B. & P. O. Elks v. Grand Lodge I. B. & P. O. Elks, 4 Cir., 50 F.2d 860, and Grand Lodge, etc., v. Eureka Lodge, 4 Cir., 114 F.2d 46, this court applied the principle to restrain seceding members of a fraternal order from using its name for a new order which they were founding, on the ground that such use would constitute a fraud upon the original order and upon the public. In General Shoe Corp. v. Rosen, 4 Cir., 111 F.2d 95, and Little Tavern Shops v. Davis, 4 Cir., 116 F.2d 903, we applied the principle to restrain the use of otherwise permissible words to describe merchandise, in one case, and a place of business, in the other, in such way as to enable the defendants therein to appropriate to themselves the benefit of the advertising and good will of the plaintiffs. We see no reason why the same principles are not applicable in the case of one who perpetrates a fraud both upon the public and upon the producer of radio programs by representing that his performance is connected in some way with such programs. As said by Judge Watson in his discussion of the decree in the Pennsylvania case: "The plaintiff's program, titled "The Lone Ranger," and the specific and distinctive characteristics of said radio broadcast presentation have a peculiar monetary value and the plaintiff, and its licensees are entitled to protection as against any person or persons without license by the plaintiff who announce, advertise, perform, represent or publish in any manner, sound or form, which leads, or tends to lead, the public to believe that there is some connection or association with the radio program of the plaintiff, the name or the character of the program which have been identified to the general public".

"Obviously, the question of what is unfair competition in business must be determined with particular reference to the character and circumstances of the business." International·News Service v. Associated Press, 248 U.S. 215, 236, 39 S.Ct. 68, 71, 63 L.Ed. 211, 2 A.L.R. 293. In the Elks cases, supra, it was the use of the corporate name of the original order. In General Shoe Co. v. Rosen, supra, it was the use of the word "Friendly" in such way as to pass off shoes as having been manufactured by plaintiff. In the Little Tavern case, supra, it was the use of the words "Little Tavern" in such way as to deceive the public into believing that the tavern was one of a chain operated by plaintiff. Here it is the use of the term "Lone Ranger" and his distinctive call to his horse in such way as to lead to the belief on the part of children interested in the programs of the radio broadcast that the entertainment of defendants is connected in some way with these programs. In all, there is involved the element of fraudulent attempt of some one to "reap where he has not sown" and to appropriate to himself "the harvest of those who have sown". Cf. Chaffee, Unfair Competition, 53 Harvard Law Review 1289, 1311. Even if relief under the principles of unfair competition were confined to cases of palming off of goods or services, we think that the case at bar would be one calling for relief; but we do not understand that relief in this class of cases is so limited. As said by the Supreme Court in International News Service v. Associated Press, supra: "It is said that the elements of unfair competition are lacking because there is no attempt by defendant to palm off its goods as those of the complainant, characteristic of the most familiar, if not the most typical, cases of unfair competition. Howe Scale Co. v. Wyckoff, Seamans [& Benedict], 198 U.S. 118, 140, 25 S.Ct. 609, 49 L.Ed. 972. But we cannot concede that the right to equitable relief is confined to that class of cases."

The subject is treated in the A. L. I. Restatement of Torts secs. 716 et seq. Under the principles there laid down, there can be no question, we think, but that "The Lone Ranger" should be considered as a trade name under which plaintiff's radio programs are broadcast, and that defendants infringed plaintiff's rights therein when they advertised Powell as the "Original Lone Ranger", even though they prefixed or added the qualifying words, "talking picture" or "of talking picture fame", and when they had him put on a performance in which he appeared in the character of the "Lone Ranger" of the radio broadcast, masked, riding a white horse and using the distinctive call to the horse of the hero of plaintiff's program.

■ And we are not impressed by the argument that defendants are protected in what they have done because of Powell's connection with the motion pictures licensed by plaintiff. The contention that the advertisement is true is not correct. Powell is not the "Lone Ranger" at all. He is merely a moving picture actor who took the part of the "Lone Ranger" in a motion picture play of that name produced long after the "Lone Ranger" of radio had become widely known. The only reason that defendant's desire to call him the "talking picture Lone Ranger" or the "Lone Ranger of talking picture fame", with "Lone Ranger" emphasized and the qualifying words in smaller lettering, is to attract the patronage of those who will confuse him in some way with the "Lone Ranger" of the radio programs; and the principle is applicable that, not only must one tell the truth, but he must tell it in a truthful way, i. e. so as not to deceive the public. 38 Cyc. 847. Thus, one may not use even his own name or the name of the town in which he does business as descriptive of his goods, if the effect will be to mislead the public to the prejudice of a competitor. See opinion of Holmes, J., in American Waltham Watch Co. v. United States Watch Co., 173 Mass. 85, 53 N.E. 141, 43 L.R.A. 826, 73 Am.St.Rep. 263, and cases there cited; Nims, Unfair Competition, 3rd Ed. sec. 72; Chaffee, Unfair Competition. 53 Harvard Law Review 1289, 1296. The use of the words "talking picture" or "of talking picture fame" in the advertisements was insufficient to protect defendants because the use of these words as they were used in the advertisements would not obviate the tendency of the use of "Lone Ranger" as emphasized therein to deceive and mislead the public. If it is desired to advertise Powell as the man who played the part of Allan King as the "Lone Ranger" in the motion picture of that name, this should be allowed; but any advertisement that he is the "Lone Ranger" must be avoided, as must any other language tending to imply connection with the "Lone Ranger" of plaintiff's radio programs or any form of advertising which will lead the public to believe that there is such connection.

■ For the reasons stated, we think that plaintiff was entitled to relief, without regard to the Pennsylvania decree. There can be no question, however, but that that decree estops defendants from controverting the right of plaintiff to relief to the extent there granted or from controverting the facts as there established. E. I. Du Pont De Nemours & Co. v. Sylvania Industrial Corporation, 4 Cir., 122 F.2d 400; Parker v. United States, 4 Cir., 114 F.2d 330; National Bondholders Corp. v. Seaboard Citizens Nat. Bank of Norfolk, 4 Cir., 110 F.2d 138; Monarch Refrigerating Co. v. Farmers' Peanut Co., 4 Cir., 74 F.2d 790; Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195. The suggestion that the production of the motion picture play "Hi-Yo, Silver" in anywise affected the rights of the parties is entirely without merit. Powell's part in that picture was substantially the same as in the previous one and could have conferred upon him no greater right than did that to advertise himself as the "Lone Ranger" or to use the distinctive call to the horse of the radio broadcast.

For the reasons stated, the judgment appealed from will be reversed and the cause will be remanded for further proceedings in accordance with this opinion.

Reversed.